Argued January 10, reversed January 29, costs taxed February 13, 1929.

## THE AMERICAN OIL PUMP & TANK COMPANY *v.* E. L. FOUST.

(274 Pac. 322.)

For appellant there was a brief over the name of *Messrs. Christopherson & Matthews* with an oral argument by *Mr. Q. L. Matthews.*

For respondent there was a brief and oral argument by *Mr. Jesse G. Warrington.*

ROSSMAN, J.—1, 2. There was a controversy in the evidence as to whether the Anchor Sales Company was the vendor of this equipment, and installed it as such; or, whether it was the agent of the plaintiff, and acted in this representative capacity in making the sale and the installation. Each party offered substantial evidence in support of its contention. The court in ruling upon the admissibility of this evidence, received three letters, offered by the defendant, written by himself to, and received by the plaintiff. These letters constituted a portion of the correspondence that passed between the parties after the plaintiff requested the defendant to pay the notes mentioned in the complaint. Each of these three letters was in answer to a previous one written by the plaintiff to the defendant, which had already been received in evidence without objection, and each of them replied to inquiries contained in plaintiff's previous letters, or explained statements therein contained pertinent to the notes. The effect of these letters, together with the several written by the plaintiff, was to make it seem, that the Anchor Sales Company was not vendor, but was agent for the plaintiff; at least one of plaintiff's letters contained an express admission to that effect. If only the plaintiff's letters had been placed before the jury the continuity of the story would be broken and the cogency of the proof would have been lessened. It is, perhaps, for this reason, that the rules of evidence provide, that when part of a declaration, writing or conversation is re-

ceived in evidence, that the remainder becomes admissible, when it is necessary to make the first part understood: Or. L., § 711. Hence, the reply letters offered by the defendant were admissible; but, this rule of evidence was not intended as a means of bringing into the record immaterial and irrelevant matter. Defendant's letters contained hearsay statements and other matter which was irrelevant and immaterial. But the plaintiff's objections were offered, not to the inadmissible portions, but to the entire letter, and consisted of the general objection. It is well established that a general objection to testimony as a whole, does not avail when part of it is admissible: Wigmore on Ev. (2 ed.), § 18; Jones, Ev., Civil Cases (3 ed.), § 894. We have examined the letters carefully: each contained material which was admissible. Plaintiff's general objection was, therefore, properly overruled. Plaintiff offered objections to specific portions of one of the letters which the court overruled. We have examined these portions and find no error in the ruling.

There was substantial evidence from which the jury could properly find: that the pump was improperly installed; that it leaked gasoline of the value of $19.55; that due to the lack of a lock upon the pump, gasoline of the value of $14.45 was stolen from it; that in the latter part of December, 1925, it failed to operate and has not been operated since that time; that between July 10, 1925, and December 28, 1925, which is the period during which the defendant was able to use the pump, his net profits were $304 from the sale of gasoline; that the defendant spent $12 in excavating a pit for the reception of the tank, which was an adjunct of the pump; that there was no place where the defendant could rent a pump, and there

was no established rental value for such equipment; and that when the equipment ceased to operate in December, 1925, it became valueless.

The jury was instructed that if it found, that the plaintiff negligently installed the pump, and that if as a proximate result thereof gasoline leaked and was stolen, it should allow the defendant the value of the gasoline thus lost; further, that if, as a result of the plaintiff's negligent installation, the pump broke down and refused to operate, he could recover the value of its use for such reasonable time as elapsed before he could provide himself with substitute equipment, and that in arriving at an appraisal of the value of the use of the pump, the jury should consider the earnings which the defendant had made during the five months immediately following his commencement of business and preceding the breakdown of the pump. The instructions also permitted the defendant to counterclaim for the cost of the pit.

The plaintiff does not challenge the instruction which informed the jury, that the defendant was entitled to a return of the $70 which he had paid toward the purchase price of the pump. We, therefore, proceed to a consideration of the instructions concerning the items of consequential damages. It is clear, that when the pump was sold the vendor knew, that the defendant expected to use it in the operation of a gasoline filling station for profit.

Section 8178, Or. L., provides:

"Subject to the provisions of this act and of any statute in that behalf, there is no implied warranty or condition as to quality or fitness for any particular purpose of goods supplied under a contract to sell or a sale, except as follows:

"(1) Where the buyer, expressly or by implication, makes known to the seller the particular purpose for which the goods are required, and it appears that the buyer relies on the seller's skill or judgment (whether he be the grower or manufacturer or not), there is an implied warranty that the goods shall be reasonably fit for such purpose."

The defendant testified, that he had never owned such a pump before, and there was evidence that he relied upon the plaintiff's skill. The plaintiff concedes, that it is a manufacturer.

3, 4. The consequential damages sought arose out of the plaintiff's breach of the foregoing warranties. The breach was not contested by the plaintiff. A defaulting vendor must compensate his vendee with such damages as may fairly and reasonably be considered either as arising naturally from the breach, or such as may reasonably be supposed to have been in the contemplation of the parties, when they made the sale, as the probable result of its breach. As a direct corollary of this rule is the other, that a buyer cannot recover damages for a loss which he might have prevented by the exercise of ordinary care. He, therefore, owes a duty to exercise ordinary care in order to render the damages arising from the breach as light as possible: Sutherland, Damages (4 ed.), § 89; Am. & Eng. Ency. of Law (2 ed.), p. 223, and this may include the duty to replace the defective article with an efficient one, when this is possible: Williston on Sales (2 ed.), § 599h.

5. Such being the general rule, we believe that the defendant was entitled to recover from the plaintiff the market value of any gasoline that leaked from the equipment due to negligent installation up to the time that the defendant discovered the leaks, or could have

discovered them by the exercise of due care. The following cases so hold: *Poland* v. *Miller,* 95 Ind. 387 (48 Am. Rep. 730); *Tatro* v. *Brower,* 118 Mich. 615 (77 N. W. 274); *Hitchcock* v. *Hunt,* 28 Conn. 343.

6. But, we find nothing in the evidence which would warrant a recovery for the value of the stolen gasoline. The pump was not locked, because the plaintiff failed to construct skirts upon it, which we understand are large sheets of metal covering the lower portion of the pump. The absence of these skirts was plainly visible, and their absence also made evident the lack of provision for locking the pump. The gasoline was stolen November 18th, four months after the defendant began to operate it. This loss would have been prevented had the defendant taken due care to guard his property after it became evident to him that the plaintiff's installation of the pump was defective.

7. The excavation of the pit for the reception of the tank was a necessary item of expense. The defendant expended $12 for this work upon the failure of the plaintiff to perform this portion of its undertaking. We understand that the plaintiff practically requested the defendant to have this work done. No citation of authority is necessary to establish the recovery of this sum.

8–11. This leaves as the sole remaining item, the loss which the defendant sustained when the pump failed to function in December of 1925. The defendant was entitled to equipment which would operate, and to its daily use in his business. A return to him of the payments he had made upon the purchase price would not compensate him for his full damages, because he had purchased the equipment for use in a business which was bringing him a profit. Both par-

ties apparently assumed, that such a pump should render service for more than five months' time. When it ceased to operate, in the latter part of December, the defendant was unable to supply his customers with gasoline. While there is no evidence upon the subject, we assume, that similar pumps could be purchased from other manufacturers, and could be installed before any great period of time had passed. The court's instructions authorized the jury to allow the defendant compensation for such "a reasonable time within which he could have removed this pump and replaced it with a workable and usable one." No exception was saved to this instruction, and appellant finds no fault with it. But, it contends, that in determining the amount of compensation for the above period of time, the jury should have been told, that it could allow no more than the rental value of such a pump. Ordinarily an allowance of the rental value would fairly compensate the injured party: see Sutherland on Damages (4 ed.), p. 2626, *Denton* v. *Fay*, 64 Ill. 417 and *Savage* v. *Glenn*, 10 Or. 440. But, it is to be observed that in our case, there was substantial evidence to the effect, that the plaintiff knew, that the defendant expected to use this device in the operation of a business for profit. In such instances, where the loss of profits in the event of a breach, was within the contemplation of the parties, a recovery limited to the rental value of the device may not compensate fairly for the loss sustained during the period while an efficient machine is being substituted for the defective one; the lost profits are sometimes recoverable: *Feeney & B. Co.* v. *Stone*, 89 Or. 360 (171 Pac. 569, 174 Pac. 152); see the comprehensive note accompanying *California Press Mfg. Co.* v. *Stafford Pack. Co.*, 192 Cal. 479

(221 Pac. 345, 32 A. L. R. 114). The only evidence in this case upon the subject, was to the effect that in the Portland territory there was no established market value for gasoline pumps, and that such devices were rarely obtainable upon a rental basis. Such being the circumstances the court was of necessity driven to the adoption of another measure of compensation for the period of substitution of equipment. It instructed the jury, that in determining the value of the use of the pump, "you would be entitled to consider what his (defendant's) average earnings had been over the five or six months preceding the 27th day of December, 1925, when it appears from the evidence that the pump became unusable, merely for whatever it may be worth to you in determining what was the reasonable value of the use of the pump to the defendant." Thus there was adopted a rule of measuring the value of the use of the equipment similar to that employed in *Williams* v. *Island Milling Co.*, 25 Or. 573 (37 Pac. 49). The court had already received evidence of defendant's earnings during this period of time. We do not believe, that this instruction was erroneous; nor do we find, that the reception of the evidence of defendant's net profit for the foregoing period was in error. The evidence was received to afford a premise for the instruction. An examination of *Feeney & B. Co.* v. *Stone, supra,* and the note in 32 A. L. R. 120, will readily convince one that a proper instruction, allowing lost profits, would have been justifiable. Defendant's business was a small one: in addition to selling gasoline, and lubricants, he also sold confections, tobacco and sandwiches. He was the owner of the land and of the equipment: we believe it was sufficiently established

to have warranted the reception of this evidence and the instruction given.

The remaining assignment of error is based upon an instruction in regard to the burden of proof. While this instruction is subject to criticism from a lawyer's technical point of view, we do not believe that its shortcoming could have misled a jury of laymen. The counterclaim is not subject to the objection that it failed to allege a cause of action.

A new judgment of the lower court should be entered which would eliminate the item of $14.55. The cause is therefore remanded with instructions to enter a judgment as before for the defendant, less $14.55.

REVERSED AND REMANDED.

COSHOW, C. J., and RAND and McBRIDE, JJ., concur.