Argued May 28; affirmed June 17, 1947

# GALLAGHER *v.* PORTLAND TRACTION CO.

(182 P. (2d) 354)

In Banc.

*McDannell Brown,* of Portland, (Klepper, Brown & Patterson on brief) for appellant.

*John J. Coughlin,* of Portland, (with Griffith, Peck, Phillips & Nelson, of Portland, on brief) for respondents.

BELT, J.

Plaintiff, a widow 77 years of age, brought this action to recover damages for personal injuries alleged to have been sustained while she was riding as a passenger for hire in a motor bus—a common carrier—owned and operated by the defendant company. It is

alleged in the Complaint that while plaintiff was a passenger on the bus—which was being operated on the streets of the city of Portland—the driver stopped the bus in a violent manner and thereby threw her from her seat to the floor. She alleges that as a result of such negligence she sustained the following injuries:

> "(a) The muscles, tendons, ligaments, and nerves of the plaintiff's cervical vertebrae, arms, shoulders, sternum, chest walls, and back were bruised, sprained and torn.
> "(b) A large ventral hernia of the abdomen.
> "(c) Nervous shock.
> "(d) Mental pain and suffering which continues to the present time and will continue for an indefinite time to come."

The defendant admitted that it owned and operated the bus in question, but denied the charge of negligence and the occurrence of the alleged accident. Defendant further asserts that plaintiff's physical condition is not the result of its alleged negligence.

On these issues, the cause was submitted to a jury and a verdict returned in favor of the defendant. Plaintiff appeals, assigning as sole error the admission in evidence of a hospital record.

This case is unique in that plaintiff is the only person who testified about having any knowledge of the accident. The Traction Company introduced evidence concerning an extensive investigation made by it to determine whether any accident occurred. The defendant was unable to find any person, operator or other employee of the company who had any knowledge about such accident:

The plaintiff thus gives her version about what occurred:

"A. I was sitting directly back of the driver. There is a short seat there and I was on the outside of the short seat. There was another lady sitting beside me.

\* \* \*

"A. We were just running along in the usual way—

\* \* \*

"Q. What happened?

"A. And all of a sudden she says, like this (demonstrating), 'Oh,' she says, 'what is that?' And just like that I looked up, and just as quick as—it happened so quick—all I could see was the—a gray board in front of the window just back of the driver, and it seemed about that far (indicating)—

\* \* \*

"Q. What was it, do you know?

"A. Well, they said it was a bus, a truck.

"Q. What happened then?

"A. Then I was thrown. I don't know any more.

"Q. What caused you to be thrown?

"A. The driver stopped the bus so quick that it jerked me right out of my seat and I got the full impact on my stomach here and here (indicating)."

Concerning her injuries, the plaintiff further testified:

"A. My chest—it is all internal; my injuries was all internal, everything—my chest is, has been badly bruised.

\* \* \*

"Q. What happened to your chest?

"A. Oh, it was so I couldn't let go of my chest. When they lifted me up the lady said 'Where are you hurt?' I couldn't speak and I grabbed my chest like that (illustrating).

"Q. All right, your chest. What other injuries did you receive?

"A. Well, then, I began to get sore. I got sick down here (indicating) and—until all my body was sore, and pain in my back here (indicating) and around in your spine; all around here (indicating) was like sore boils, so I couldn't touch my hands to my body.

"Q. What other—you spoke of your chest and, apparently, your abdomen. What else? What other parts of your body?

"A. Well, my arms. That is, of course that trouble in my arms comes from my injury here. You can—until this day I can't lift my arm to comb my hair because it hurts my chest.

\* \* \*

"Q. What else? Your arm, chest, sternum, and abdomen?

"A. Yes.

"Q. What other parts of your body?

"A. Just all of my body from here, from way down at my spine (indicating) as far as my spine went, and up to here (indicating) was so sore; it seemed as though there was a great big lump in here (indicating) trying to shove out through my back. And then my nerves they all began to poke out through my skin, poking out like this (illustrating)."

There was much contention and conflict in the courts relative to the admissibility of hospital records under the common law "shop book" rule, even when trustworthy entries were made in the regular course of business by doctors and nurses. Hospital records were not received in evidence until the persons making such entries appeared in court to authenticate the same. The important work of hospitals was thus often interfered with and inconvenienced as a result of the tech-

nicalities and refinements of the "shop book" rule. In many instances, doctors and nurses who had made the entries were not available, due to the lapse of time. Hence, truth remained in the dark. The hardship, inconvenience and waste of time caused by the application of the "shop book" rule to such records brought about reform, and, in 1936, "The Uniform Business Records As Evidence Act" was adopted. Many states, including Oregon (chapter 414, Oregon Laws, 1941), patterned legislation after such Act. Section 2 of our Act, which is copied verbatim therefrom, provides:

> "A record of an act, condition or event, shall, in so far as relevant, be competent evidence if the custodian or other qualified witness testifies to its identity and the mode of its preparation, and if it was made in the regular course of business at or near the time of the act, condition or event, and if, in the opinion of the court, the sources of information, method and time of preparation were such as to justify its admission."

■■ In *Natwick v. Moyer*, 177 Or. 486, 163 P. (2d) 936, it was held—in keeping with the modern trend of authority—that the Act applied to hospital records and that such records were admissible in evidence when duly authenticated and relevant to the issues. 144 A. L. R. 731, annotation. See splendid article, "Hospital Records as Evidence", by Dean Hale, 14 So. Calif. L. Rev. 99. Counsel for appellant do not contend to the contrary. It is plaintiff's contention that the Multnomah County Hospital record in question, relative to the plaintiff, commencing on December 23, 1931, and extending for a period of fifteen years, is not admissible in its entirety on account of many irrelevant matters contained therein and to which specific objection was made.

The trial court properly called on counsel to point out the particular parts of the hospital record which were objectionable. It was not the duty of the court to examine a record extending over a period of years and to sift out the wheat from the chaff. Plaintiff does not contend that the hospital record is not authentic.

■ We agree with appellant that if the record contained irrelevant matter it should not have been admitted in its entirety over the specific objections thereto. 1 Wigmore, Evidence (2d ed.) § 17; *Cosgrove v. Tracey*, 156 Or. 1 64 P. (2d) 1321; *Paine v. Meier & Frank Co.*, 146 Or. 40, 27 P. (2d) 315; *Taylor v. Taylor*, 54 Or. 560, 103 P. 524.

■ Aside from certain irrelevant matter in the hospital record, hereinafter referred to, the record was admissible, as tending to show that the physical condition of the plaintiff, of which she now complains, existed prior to the time of the accident in question. The hospital record also tended to refute her testimony that prior to the accident she was in "perfect physical condition". Plaintiff was operated on many years ago—as shown by the hospital record—for the "ventral hernia of the abdomen" of which she now complains in her Complaint. There is also medical testimony that her ventral hernia was not the result of any trauma or accident. Plaintiff received treatment in the hospital on four occasions in 1936; five in 1939; two in 1940; one in 1941; and one in 1945 prior to the alleged accident. Indeed, such record shows that plaintiff was treated for substantially all of the injuries alleged in the Complaint, which she says is the proximate result of the negligence of the defendant.

When plaintiff went to the St. Vincent Hospital about two months after the accident, she complained,

as shown by that hospital record—to which no objection was made—that she suffered from severe pain in the chest, nervousness, dizziness and weakness. Dr. Joseph Milton Murphy, of the hospital staff, who attended the plaintiff, diagnosed plaintiff's condition as being due to: angina pectoris, hypertension, arteriosclerosis, and abdominal hernia. Dr. Murphy did not attribute any of these conditions to the accident. It is rather significant that plaintiff did not call him as her witness.

■■■ Most of the objections to the admission of the hospital record were of a general nature, and avail nothing on appeal. *Marx v. Parks* (Mo.), 39 S. W. (2d) 570; *Meiselman v. Crown Heights Hospital,* 285 N. Y. 389, 34 N. E. (2d) 367; *Claffey v. Fenelon,* 263 Mass. 427, 161 N. E. 616. As said in *American Oil etc. Co. v. Foust,* 128 Or. 263, 274 P. 322, a general objection to the testimony as a whole does not avail if some part thereof is admissible: citing Wigmore, Evidence (2d ed.) § 18, and Jones, Evidence, Civil Cases (3d ed.) § 894. An objection based upon notations in the hospital record of diagnoses of the plaintiff's physical condition, if relevant, is not well taken. *Reed v. Order of United Commercial Travelers,* 2 Cir., 123 F. (2d) 252; *McDowd v. Pig'n Whistle Corp.,* 26 Cal. (2d) 696, 160 P. (2d) 797. The only specific objections to the record relate to the following notations therein: (1) *"She receives $37.50 old age compensation";* (2) *"Claims this* (sum) *is insufficient for her needs";* and (3) *"This patient is absolutely unable to support herself; her income is at present limited to $18."*

■■■ The purpose of the "Uniform Act" was to liberalize the common law principles relating to the admissibility of such records. It was not to make evidence relevant which was irrelevant. We think the

above italicized notations in the hospital record, to which specific objections were made, were not relevant and ought to have been deleted. Admission of the record in its entirety was error, but it does not follow that such error justifies a reversal of the judgment. In our opinion, plaintiff's rights were not substantially affected by such ruling. Plaintiff testified about her general destitute condition and being in the County Poor Farm. As a general rule, the poverty of a plaintiff in a personal injury action is not prejudicial to the cause.

■ Apparently the jury did not believe that plaintiff was injured in the bus. There is ample evidence to support the verdict.

JUDGMENT AFFIRMED.