Argued and submitted March 24, affirmed October 6,
reconsideration denied December 4,
petition for review denied December 16, 1980

**MEISLAHN,**
*Appellant,*
*v.*
**DEMOREST,**
*Respondent.*

(No. A7711 16789, CA 14111)

617 P2d 322

John R. Bakkensen, Portland, argued the cause for appellant. With him on the briefs were James N. Westwood, and Miller, Anderson, Nash, Yerke & Wiener, Portland.

Jack L. Kennedy, Portland, argued the cause for respondent. With him on the brief were Allen Reel and Kennedy, King, & McClurg, Portland.

Before Joseph, Presiding Judge, and Warden and Warren, Judges.

WARREN, J.

## WARREN, J.

Plaintiff brought this action for assault and battery against defendant for an attempted sexual assault which allegedly occurred while the parties and their respective spouses were vacationing in Hawaii. The jury returned a verdict in favor of defendant.

Defendant and plaintiff's husband belonged to the same golf club in Portland and had previously made plans to play golf together in Hawaii in January, 1976, during the Pro-Am tournament at the Keauhou Golf Course. On arrival, both couples took accommodations near the golf course.

A few days after they arrived in Hawaii, the two couples played a round of golf as a foursome. After completing their round of golf, defendant invited the plaintiff and her husband to his condominium for cocktails. During the ensuing hour and one half, plaintiff consumed two drinks while plaintiff's husband and defendant consumed substantially more, to the point that plaintiff's husband either became very sleepy or passed out. Because it was getting late and her husband was to play in the tournament the next day, plaintiff wanted to leave and defendant agreed to drive them to their hotel a short distance away.

According to plaintiff's version of the facts, which from this point on varies from defendant's in nearly every particular, she helped her semi-conscious husband into the back seat of defendant's automobile and took the front passenger seat while defendant drove. During the five minute ride to plaintiff's hotel, defendant made several advances toward plaintiff which she resisted. After arrival at the hotel, plaintiff became separated from her husband, who made his way unassisted to their room. Defendant then pursued the plaintiff about the hotel and made at least three attempts to attack her. In one of these attacks, he threatened to rape or kill her, bent her backwards over a railing and tore her clothing. Plaintiff testified that when defendant pressed himself against her she felt an erection.

Defendant testified, on the contrary, that the ride to plaintiff's hotel was uneventful and that on arrival at the hotel, plaintiff thanked defendant for a nice evening and that she and her husband made their way into the hotel while defendant remained in his vehicle before returning to his condominium.

As a result of the claimed assault, plaintiff alleged that she sustained physical injury as well as "permanent psychological injury," including emotional upset, introversion and alcohol addiction.

On appeal, plaintiff first contends that the trial court erred in admitting into evidence five sets of hospital records regarding plaintiff's treatment, both before and after the January, 1976, incident. In each case, plaintiff's objection was on the ground that the exhibits were either cumulative of oral testimony concerning plaintiff's treatment or were irrelevant to the issues in the case or both.

■■ Because plaintiff claimed that defendant's attack upon her caused her psychological and emotional injury as well as alcohol addiction, defendant was entitled to offer evidence that her claimed conditions preexisted the incident and were therefore not caused by it or were, at least, not caused by the incident to the extent claimed. *Gallagher v. Portland Traction Co.,* 181 Or 385, 391, 182 P2d 354 (1947). While plaintiff does not maintain that defendant is precluded from offering any evidence on these subjects, she contends that these particular records should not have been admitted because they contained irrelevant matter. With the exceptions noted below, her objections were to the whole exhibit, were general in nature and, as such, would not require exclusion unless the documents contained *no* relevant material.

As the supreme court stated in *Gallagher:*

"It is plaintiff's contention that the Multnomah County Hospital record in question, relative to plaintiff, commencing on December 23, 1931, and extending for a period of 15 years, is not admissible in its

entirety on account of many irrelevant matters contained therein and to which specific objection was made.

"The trial court properly called on counsel to point out the particular parts of the hospital record which were objectionable. It was not the duty of the court to examine a record extending over a period of years and to sift out the wheat from the chaff. Plaintiff does not contend that the hospital record is not authentic.

"* * * * *

"Most of the objections to the admission of the hospital records were of a general nature and avail nothing on appeal. [Citations omitted.] As said in *American Oil etc. Co. v. Foust,* 128 Or 263, 274 P 322, a general objection to the testimony as a whole does not avail if some part thereof is admissible * * *." 181 Or at 390-92. *See also Biegler v. Kirby,* 281 Or 423, 426, 574 P2d 1127 (1978).

■ The records in the present case did contain irrelevant matter, but in each case plaintiff was afforded an opportunity, which she exercised, to examine the records and make specific objections to the irrelevant portions.[1] The only specific items which plaintiff challenged as irrelevant were the nurses' notes, charts, electrocardiograms, and the results of reinforcement therapy and various tests given plaintiff in her treatment at Raleigh Hills Hospital for alcoholism.

While plaintiff mentioned the above items, she did not request to have withdrawn any specific portions of that hospital record, but instead objected to the exhibit as a whole.

"* * * When an objection is made to a voluminous document such as the * * * file here, the objecting party has the duty to inform the court with *particularity* which portions of the document are inadmissible. * * *" *State ex rel Juv. Dept. v. Robinson,* 31 Or App 1097, 1102-03, 572 P2d 336 (1977). (Emphasis supplied.)

[1] We have examined each of the five sets of hospital records and find in each set evidence from which the jury could conclude that plaintiff's addiction to alcohol, as well as her emotional difficulties, long preceeded the January, 1976, incident.

Here, plaintiff's objection to the documents did not inform the court with sufficient particularity as to which portion she was challenging. At trial, plaintiff testified about her hospitalization for alcoholism and her reinforcement treatments. Other than plaintiff's vague assertion that the results of her EKG's and other tests would "confuse the jury," we are not shown and do not see how they were prejudicial to her case.

■ ■  Plaintiff also objected to some of the records as being cumulative of unobjected-to oral testimony. An objection to evidence as being cumulative is addressed to the discretion of the trial court. *Gen. Constr. Co. v. Ore. Fish Comm.,* 26 Or App 577, 586-87, 554 P2d 185 (1977); *Simmons v. Holm et al,* 229 Or 373, 406, 367 P2d 368 (1961). We find that there was no abuse of discretion.

■  In her second assignment of error, plaintiff contends that the trial court erred in rejecting her offer of proof during her rebuttal case of a psychiatrist's testimony concerning possible sexual aggressiveness of impotent men.

In her case-in-chief, plaintiff called as a witness a Mr. Grimshaw, an acquaintance of the defendant. He testified:
"* * * * *

"Q Did you ever have a conversation with Mr. Demorest regarding this incident in Hawaii?

"A An offhand conversation, yes.

"Q Will you tell the jury what the conversation was?
"* * * * *

"A Um, well, he was not very kind in his words about Mrs. Meislahn and disclaimed any part of it.

"Q Did he say anything to you about why this could not have happened?

"A He did mention that he thought it was awfully hard for someone who was impotent to cause such an incident."
"* * * * *

Clearly the evidence tendered by the plaintiff did not support her claim that defendant had assaulted her. If anything, this evidence tended to impeach her own testimony that she had felt an erection when defendant pressed himself against her. It detracted from her claim and had no place in her case-in-chief. The evidence was anticipatory of a defensive claim that defendant had not made and, as far as the record shows, had never intended to make.[2]

In his own case, defendant admitted that he had told witness Grimshaw that he was impotent and testified that he had been unable to have sexual relations for about five years. On cross-examination by plaintiff, he related that he was not frustrated by his condition and that he continued to have sexual desires.

Plaintiff contends that defendant's testimony entitled her to offer, in her rebuttal case, testimony of a psychiatrist to rebut the defendant's "line of defense" that he could not have committed the assault because of impotency. Defendant's objection to the testimony as improper rebuttal was sustained and plaintiff made the following offer of proof:

"* * * * *

"Q Doctor, next I'm going to ask you a hypothetical question. Do you have an opinion based on reasonable medical probability as to whether or not the sexual drives of an impotent man would be affected by his impotency?

"A Yes there would be an effect although it would be difficult to predict what that effect would be. Some people take it very philosophically, of course, and it has little effect.

"Others are depressed by it and are not — they don't function as comfortably socially with people of the opposite sex.

"Then there are a group who are, in fact, more aggressive as a result of their impotency and spend a good deal of energy and time in trying to either recapture their sexual potency or to disprove it.

---

[2] Up to that point in the case, defendant had not claimed that he was incapable of committing the alleged assault due to impotence or any other reason, but only that he *had not* committed it.

The curious posture in which this issue is presented is that all the evidence as to defendant's impotency was irrelevant as to whether an attack had taken place. First, defendant never claimed that he could not have committed the assault and his testimony in his case-in-chief cannot be so interpreted. Second, plaintiff invited defendant's evidence and, in fact, elicited most of it.[3] She opened the door to the collateral issue of defendant's impotency and defendant was entitled to "* * * negative, explain, * * * counterbalance" or, as here, agree with plaintiff's evidence on the same issue. *Wynn v. Sundquist,* 259 Or 125, 137, 485 P2d 1085 (1971); *Freedman v. Cholick,* 233 Or 569, 573-74, 379 P2d 575 (1963). What defendant said required no rebuttal because it was wholly consistent with plaintiff's theory of the case.

> "In general, rebuttal testimony will be excluded except for that made necessary by the opponent's case-in-chief. *State v. Fisher,* 232 Or 558, 376 P2d 418 (1962); 6 Wigmore, Evidence (3d ed) 510, § 1873. Whether such evidence is necessary is ordinarily a matter of discretion. *Parmentier v. Ransom,* 179 Or 17, 22, 169 P2d 883 (1946)." 233 Or at 572.

Here, nothing in defendant's case-in-chief made necessary the proffered rebuttal testimony because nothing defendant said could be construed as a claim that he did not have sexual desires, could not have been aggressive or could not have committed the assault. The sum total of his testimony was that, although impotent, he continued to have sexual desires but did not assault the plaintiff.

An additional reason why this rebuttal evidence was properly rejected was that it was speculative and opened a wide range of collateral matters. The

---

[3] As the Supreme Court stated in *Parmentier v. Ransom,* 179 Or 17, 21-22, 169 P2d 883 (1946):

> "* * * It has been held that it is within the court's discretion to admit in rebuttal evidence which tends to controvert unexpected evidence adduced by a defendant. * * *"

But here, what defendant said was in agreement with what plaintiff elicited in her case-in-chief.

psychiatrist's testimony would not have tended to rebut anything that the defendant asserted. It did not relate in any way to the defendant, who had not been examined by the witness, and would have established only that impotent men's reaction to their condition ranges from philosophical acceptance to aggressive rejection of it.

If it had any relevance, that was outweighed by its tendency to divert the jury's attention from the issues and to protract the proceedings. Plaintiff's rebuttal case was not the point at which to commence a battle of experts, if there was to be one. The trial court in the exercise of sound judicial discretion properly excluded the offered proof.

Affirmed.