Argued and submitted September 3, Court of Appeals and circuit court reversed, case remanded to trial court for new trial September 30, 1986

## STATE OF OREGON,
*Respondent on Review,*

*v.*

## THOMAS ORLANDO CARR, JR.,
*Petitioner on Review.*

(TC C84-11-34938; CA A36895; SC S32984)

725 P2d 1287

Jonathan H. Fussner, Assistant Attorney General, Salem, argued the cause for the respondent on review. With him on the brief were Dave Frohnmayer, Attorney General, Salem, and James E. Mountain, Jr., Solicitor General, Salem.

J. Marvin Kuhn, Chief Deputy Public Defender, Salem, argued the cause for petitioner on review. With him on the brief was Gary D. Babcock, Public Defender, Salem.

PETERSON, C. J.

## PETERSON, C. J.

Defendant appeals from convictions on jury trial for the crimes of rape in the first degree, sexual abuse in the second degree and three counts of sodomy in the first degree. The Court of Appeals affirmed defendant's conviction without opinion. *State v. Carr,* 79 Or App 548, 719 P2d 925 (1986).

Defendant contends that the trial court erred in allowing the state to elicit testimony regarding the victim's character for truthfulness. We granted review to determine whether testimony by defense witnesses on direct examination suggesting a motive for the victim to lie and by the defendant on cross-examination answering affirmatively to a question whether the victim had lied, is an attack on the victim's character for truthfulness that opens the door for rehabilitation evidence of the victim's truthful character under OEC 608(1)(b).

Defendant was charged with repeatedly sodomizing and sexually abusing his stepdaughter from the time that she was about 14 to 16 years old. The victim and her younger sister testified in detail to numerous instances of such conduct by defendant over the two-year period in question.

Defendant took the stand and denied that any of the acts had taken place. Defendant and his wife (the children's mother) testified that during the two years in question they had embraced a religion that taught them, as marital partners, to act as one. They testified that before accepting this religion the wife had sole responsibility for disciplining the children. After they were taught to act as one the defendant began to participate in disciplining the children. They testified that the two girls did not like this, nor the new closeness of defendant and his wife. Defendant's wife testified that the girls "rebelled":

"Q. Did Mr. Carr's role change as far as discipline was concerned?

"A. Yes. We kind of worked [as] one. We made decisions together on what we should do when time came for discipline, how to raise them and everything.

"Q. How did [the victim] react to this?

"A. Well, they didn't like it.

"Q. When you said they, who are you talking about?

"A. [The daughter and her sister]. They took most of my time up. I was spending most of my time with [the daughter]. [The daughter] and I was close. Even if I was taking a bath they was right in there with me. When I started drawing closer to my husband and being one and things, they rebelled against it and I think this is why they, you know, it is rebelling right now."

Neither the defendant nor the wife testified on direct examination that the character of the girls for truthfulness was bad, either by reputation or opinion. Neither testified that the girls were lying. On cross examination, however, the prosecutor asked defendant:

"Q. Are you trying to tell the jury that those two children are lying because they don't like the way you discipline them?

"A. Yes, I am."

On redirect examination, defendant testified:

"Q. Do you know why they are telling the story they are telling?

"A. No, I don't.

"* * * * *

"Q. You're telling this jury, are you not, that what [the daughter] and [her sister] said is not true?

"A. Yes, I am. All of it is not true. All of it."

The prosecution called the daughter's aunt (the wife's sister) to testify. Defendant objected to the offer of her testimony that the daughter was honest and truthful. There was extensive colloquy among the court and counsel concerning whether OEC 608(1)(b) would permit the receipt of such testimony.

The trial court allowed the aunt to testify. The aunt testified that she had known the daughter since the daughter was born, and that the daughter was an "honest person" and would not lie.

OEC 608(1) provides:

"The credibility of a witness may be * * * supported by evidence in the form of opinion or reputation, but:

"(a) The evidence may refer only to character for truthfulness or untruthfulness; and

"(b)   Evidence of truthful character is admissible only after the character of the witness for truthfulness has been attacked by opinion or reputation evidence or otherwise."

Defendant first argues that the testimony of the defendant and his wife merely contradicted the testimony of the daughter and did not amount to an attack on the daughter's character for truthfulness or support the introduction of evidence as to the daughter's truthful character. The state concedes that "had the defense case been limited to a denial of the charged acts, such a denial would not constitute an attack upon the veracity of the victim."

The answer to the first assertion is this. A prosecutor cannot create a foundation for OEC 608(1)(b) evidence by asking a defendant if a witness has lied. An affirmative response to such an inquiry does not put the character for truthfulness of the prosecution witness at issue, nor does it open the door for rehabilitation evidence of truthful character. Admission of the aunt's testimony based upon that foundation was error. *See State v. Allen,* 276 Or 527, 531, 555 P2d 443 (1976). (Under *former* ORS 45.620, "where a witness's testimony is merely contradicted and no affirmative attack has been waged against his character," reputation testimony supporting his testimony is inadmissible.)

The state's main claim is that the wife's testimony that the daughters were "rebelling right now" provided the foundation for the aunt's testimony on rebuttal. We turn to that question.

In its brief, the state acknowledges:

"* * * had the prosecutor inquired for the first time on cross examination into defendant's opinion of the victim's truthfulness, the question would have been improper. Rehabilitation of the victim would not be permissible unless defendant, in his direct testimony (or another defense witness in direct testimony), had first attacked the victim's character for truthfulness."

The state then argues that the daughter's character for truthfulness was attacked when the defense "proffered their theory that the victim was lying because she was 'rebelling' against parental discipline by defendant." The state argues that the testimony of the defendant and his wife went "beyond a simple denial" and attempted "to show the victim's motive to fabricate a story."

Although merely contradicting a witness's testimony does not constitute an attack on character for truthfulness, in this case the victim's testimony was not only contradicted, but the mother volunteered her opinion that the victim's accusations were indicative of her "rebelling right now." The judge and jury could have reasonably inferred that the mother was testifying that the daughter was "lying right now." The statement was unresponsive to the question and likely inadmissible as a comment upon the truth of the testimony of another witness, but it was received in evidence.[1] Even so, we hold that this unsolicited opinion did not constitute an opinion on the daughter's character for truthfulness, and rebuttal evidence of truthful character was not admissible under OEC 608(1)(b).

"Evidence of truthful character is admissible only after the character of the witness for truthfulness has been attacked by opinion or reputation evidence or otherwise." OEC 608(1)(b). The term "attacked by opinion" in OEC 608(1)(b) refers to an attack on the credibility of one witness by testimony in the form of opinion by a second witness that the first witness's *character* for truthfulness is bad. OEC 608(1)(a). In the case at bar, assuming that defendant's wife was opining that the victim was presently lying, her testimony is not the equivalent of testifying as to her opinion of the character of the victim for truthfulness. "Character" generally indicates "a person's disposition or propensity towards certain behavior, such as honesty," Kirkpatrick, Oregon Evidence 115 (1982) (hereinafter "Kirkpatrick"), or "a person's tendency to act in a certain way in all varying situations of life." Legislative Commentary to OEC 406, published in Kirkpatrick at 114.[2] The mother's testimony says nothing

---

[1] Although no such direct question was asked in this case, we note that in most cases a question asking whether the testimony of an earlier witness is true or false is improper. *State v. Middleton,* 294 Or 427, 438, 657 P2d 1215 (1983).

[2] In 1979, the Advisory Committee on Evidence Law Revision, appointed by the Law Improvement Committee, submitted a proposed new Oregon Evidence Code accompanied by an extensive commentary to the Interim Joint Committee on the Judiciary. *See* Oregon Law Institute-Oregon State Bar Program Materials for Evidence CLE, Nov-Dec 1981, v-vi (1981)(Introduction by L. Kirkpatrick). In 1981, the Subcommittee on Evidence of the Interim Joint Committee submitted its recommended version of the code to the 1981 Legislative Assembly. *Id.* Professor Kirkpatrick notes:

"The House Judiciary Committee and the Senate Justice Committee revised and

about her opinion regarding the propensity of the victim to be untruthful. The mother merely gave an unsolicited opinion as to the truth of her daughter's testimony.

The term "or otherwise" in OEC 608(1)(b) concerns testimony of prior instances of conduct by the impeached witness and includes "[e]vidence of corruption or misconduct, including conviction of a crime." Legislative Commentary to OEC 608, published in Kirkpatrick at 237. It does not include testimony by one witness suggesting that another witness is lying. In a case in which a victim is a witness to the alleged crime and the victim and the defendant are well known to one another, and the conflict in testimony is as basic as here, there is little material difference between a defendant's denial of the charges and directly contradicting the testimony of the victim, and the defendant (or defendant's witness) opining that the victim is lying. In such a case, the contradicting testimony alone may suggest each party's belief that the other is lying, but creates no foundation for evidence of truthful character under OEC 608(1)(b).

■  The state also argues that the mother's testimony shows a motive for the victim to lie or "to fabricate a story." Evidence of a witness's motive to lie at trial is not evidence of character for truthfulness as contemplated by OEC 608(1)(a). The wife's testimony may relate to bias on the part of the victim,[3] but evidence of bias does not qualify as an attack on

---

integrated the commentary of the Advisory Committee and Interim Judiciary Committee and added additional commentary to explain the changes made and the legislative intent behind various rules. * * * The commentary was not approved by the entire Legislative Assembly and was not enacted as part of the legislation. However, it will be of immeasurable assistance to lawyers and judges in interpreting the new rules." *Id.* at vi.

[3] Legislative Commentary to OEC 609-1 published in Kirkpatrick at 259:

"Oregon courts have long recognized that the feelings of a witness toward the parties * * * will slant the witness' testimony. Acts, relationships or motives that are likely to produce bias * * * therefore have long been examinable for the purpose of impeaching credibility.

"Bias * * * may * * * take the form of hostility to a party as shown by a history of conflict * * *."

OEC 609-1 (3):

"Evidence to support or rehabilitate a witness whose credibility has been attacked by evidence of bias or interest [is] limited to evidence showing a lack of bias or interest."

We express no opinion as to whether defendant laid the proper foundation for admission of evidence of bias under OEC 609-1.

the witness's reputation for truthfulness. McCormick, Evidence § 49 (3d ed 1984); 4 Wigmore, Evidence §§ 1106, 1107 (Chadbourn rev 1972); Kirkpatrick at 239; Legislative Commentary to OEC 608 published in Kirkpatrick at 238. The issue of the truthful character of the victim was not raised by testimony suggesting a motive of the victim to lie.

Finally, the state argues that this court should exercise the powers conferred upon it by Article VII (Amended), section 3, of the Oregon Constitution, which provides:

"* * * If the supreme court shall be of the opinion, after consideration of all the matters thus submitted, that the judgment of the court appealed from was such as should have been rendered in the case, such judgment shall be affirmed, notwithstanding *any error* committed during the trial * * *." (Emphasis added.)[4]

With reference to OEC 103,[5] the Legislative Commentary states:

"Section 3 of Article VII (Amended) of the Oregon Constitution requires the appellate courts of this state to affirm, notwithstanding any evidential error committed by the trial court, if there is (1) substantial and convincing evidence of guilt, in a criminal case, and (2) little if any likelihood that the error affected the verdict." Legislative Commentary to OEC 103 published in Kirkpatrick at 12.

We approve that standard. *See State v. McLean,* 255 Or 464, 468 P2d 521 (1970). Although the evidence of guilt is strong, we cannot say that there was little likelihood that the error changed the result of the trial. The evidence presented by the prosecutor to the jury on the issue of the guilt of the defendant consisted of the testimony of the victim and her

---

[4] ORS 138.230 also provides:

"After hearing the appeal, the court shall give judgment, without regard to the decision of questions which were in the discretion of the court below or to technical errors, defects or exceptions which do not affect the substantial rights of the parties."

In *State v. Van Hooser,* 266 Or 19, 23, 511 P2d 359 (1973), we stated with respect to Article VII (Amended), section 3, of the Oregon Constitution and ORS 138.320: "The standard fixed in the amendment should be the sole criterion for determining whether the judgment should be affirmed."

[5] OEC 103(1) provides in part:

"Evidential error is not presumed to be prejudicial * * *."

younger sister. This testimony was contradicted by the defendant's testimony. The credibility of the older daughter was key to the state's case. Given the lack of real or physical evidence, the jury's determination as to the credibility of the witnesses likely was the determinative factor in its verdict.

The trial court's error in admitting the aunt's testimony to bolster the credibility of the victim was not harmless. The decision of the Court of Appeals is reversed. Defendant's convictions are reversed and the case is remanded to the trial court for a new trial.