Argued and submitted December 21, 1995; resubmitted In Banc August 12, affirmed August 28, petition for review denied December 24, 1996 (324 Or 488)

# STATE OF OREGON,
## *Respondent,*

*v.*

# VICTOR O. ADONRI,
## *Appellant.*

## (C93-1552CR; CA A86161)

923 P2d 658

In Banc

David C. Degner, Deputy Public Defender, argued the cause for appellant. With him on the brief was Sally L. Avera, Public Defender.

Kaye E. Sunderland, Assistant Attorney General, argued the cause for respondent. With her on the brief were Theodore R. Kulongoski, Attorney General, and Virginia L. Linder, Solicitor General.

ARMSTRONG, J.

Warren, J., dissenting.

## ARMSTRONG, J.

Defendant appeals his convictions for first-degree rape and first-degree sodomy. ORS 163.365; ORS 163.405. He contends that the trial court erred by admitting rebuttal testimony from one of the child's teachers that she held the opinion that the child was truthful. We affirm.

Defendant was accused of raping and sodomizing a child. The child testified at trial and recounted the details of the crimes. Defendant testified at trial. Defendant denied the charges and stated that he thought that the charges were related to a potential custody problem. Defense counsel asked one of the defense witnesses about defendant's reputation for truthfulness. The state objected, but the objection was overruled. The witness testified that he had "a high regard for [defendant's] truthfulness," and that "people would always get on him by saying, 'Hey, you tell the truth too much.' "

On rebuttal, the state called one of the child's teachers. The state asked the witness her opinion of the child's truthfulness. Defendant objected, and a colloquy was held between the court and counsel off the record. The court then allowed the witness to answer, and she stated that she thought the child "was always very truthful."

On appeal, defendant argues that the court erred by admitting testimony about the child's character for truthfulness. Defendant contends that admitting evidence of a witness's character for truthfulness is not permitted under OEC 608(1), unless the credibility of that witness has first been attacked. He argues that he never attacked the credibility of the child and, therefore, that the teacher's testimony was improper.

OEC 608(1) provides:

"The credibility of a witness may be attacked or supported by evidence in the form of opinion or reputation, but:

"(a) The evidence may refer only to character for truthfulness or untruthfulness; and

"(b) Evidence of truthful character is admissible only after the character of the witness for truthfulness has been attacked by opinion or reputation evidence or otherwise."

In *State v. Carr*, 302 Or 20, 25, 725 P2d 1287 (1986), the Supreme Court explained that testimony that "merely contradict[s]" a witness's testimony does not constitute an attack on character for truthfulness. Rather, an attack on credibility "refers to an attack on the credibility of one witness by testimony in the form of opinion by a second witness that the first witness's *character* for truthfulness is bad." *Id.* at 25 (emphasis in original). An attack may also be made through admission of evidence of specific instances of misconduct. *Id.* It does not include, however, "testimony by one witness suggesting that another witness is lying." *Id.*

In *Carr*, for example, the victim's mother testified about why she thought that the victim and her sister were giving testimony about sexual abuse by the defendant. She suggested that the girls were "rebelling." *Id.* at 22-23. When asked if the girls were "lying because they don't like the way you discipline them," the mother answered, "Yes." *Id.* That testimony suggested that the girls had a motive to lie, and were, in fact, lying. Nevertheless, the court held that the testimony did not constitute an attack on the truthful character of the girls. *Id.* at 26-27.

In this case, the state argues that defendant attacked the child's character for truthfulness both directly and indirectly, thereby making evidence about her truthful character admissible under OEC 608. We disagree that any of the testimony can be characterized as a direct attack on the child's propensity to tell the truth. Defendant did present evidence about several motives for the child to lie about the abuse. But that evidence is equivalent to the evidence in *Carr* and did not constitute an attack on the child's truthfulness in general. Consequently, the rebuttal evidence about the child's character for truthfulness was not admissible under OEC 608.

The evidence was admissible, however, under the "curative admissibility" rule. That rule provides that

"where one party offers inadmissible evidence, which is received, the opponent may then offer similar facts. whose only claim to admission is that they negative or explain or counterbalance the prior inadmissible evidence, presumably on the same fact, subject matter or issue."

*Wynn v. Sundquist*, 259 Or 125, 136, 485 P2d 1085 (1971) (quoted in *State v. Renly*, 111 Or App 453, 457, 827 P2d 1345 (1992)). The testimony from defendant's witness that defendant was a truthful person was inadmissible, because defendant's character for truthfulness was not pertinent to the sexual offenses for which defendant was charged, and his character for truthfulness had not been attacked at trial. *See* OEC 404(2)(a); OEC 608(1)(b); *State v. Bailey*, 87 Or App 664, 667-68, 743 P2d 1123 (1987). The central issue was which of the two witnesses, defendant or the child, was telling the truth. Because defendant was allowed to introduce inadmissible evidence about his truthful character, testimony that the child was a truthful person was admissible to counterbalance the equivalent testimony about defendant. Consequently, the trial court did not err in admitting the teacher's rebuttal testimony about the child's character for truthfulness.

The dissent challenges the use of the curative admissibility doctrine on the ground that the evidence at issue deals with a different subject than the evidence to which it responds. The dissent implicitly considers the subject of the testimony about defendant's character for truthfulness to be just that: defendant's character for truthfulness. Consequently, it believes that evidence about the *child's* character for truthfulness is about a different subject, so evidence about the child's character cannot be admitted under the curative admissibility doctrine because it concerns a different subject. The dissent is wrong. The curative admissibility doctrine is not as limited in its scope as the dissent suggests.

The credibility of a witness does not function in a vacuum. In this case, defendant's credibility bears on the central issue in the case, which is whether he committed sexual offenses against his putative daughter. There is no issue about the identity of the offender or the nature of the conduct.

The case reduces to the issue whether defendant or the child is telling the truth about the relevant events.

Defendant was permitted over objection to present testimony about his character for truthfulness even though his character had not been attacked. The court erred in doing that. *See* OEC 608(1).

Once defendant testified, the state was free to offer evidence attacking his character for truthfulness whether or not the court erroneously admitted the evidence that it did about defendant's character. *See* OEC 608(1)(a). Therefore, the admission of evidence about defendant's truthful character opened no door to evidence that defendant was not a truthful person, because that door was already open.

Moreover, it may well be that there was no evidence available to the state by which to attack defendant's character for truthfulness. Hence, the only meaningful (and sensible) way to respond to the evidence about defendant's character may have been to offer and admit evidence about the child's character for truthfulness. Defendant opened the door by getting evidence admitted about his character for truthfulness in this swearing match. He cannot be heard to complain if the person on the other side of the match gets to do the same.

The situation here is readily distinguishable from one in which a party seeks to use the admission of inadmissible evidence to justify admission of equivalent evidence on a different subject. For example, admission of character evidence about defendant would *not* justify admission of equivalent evidence about the character for truthfulness of a state's expert on sexual abuse. Courts and commentators agree that a court should reject such an effort, because the initial admission of inadmissible evidence should not be understood to permit the categorical admission of the same type of evidence or to otherwise change the rules of evidence for one side in the trial. That is the principle upheld by the Oregon cases and the commentators cited by the dissent.

The dissent simply misunderstands the authorities that it cites. That is perhaps best exemplified by its quotation from Wigmore. Properly understood, the quotation confirms

our understanding of the doctrine.[1] The Wigmore quotation is as follows:

> "[T]he aim of curative admissibility is to give the party harmed by the introduction of inadmissible evidence an opportunity to counter the inferences that may be drawn from that inadmissible evidence; he should not be given a license to create prejudice of a different sort, unrelated to the prejudice caused him, merely so that he has a better chance of winning. Curative admissibility, in short, is designed to improve the accuracy of fact finding and is not designed simply to permit a party to avoid the harm done by giving him an opportunity to improve his chances of winning by increasing the possibility of erroneous factual adjudication with respect to some other matter. * * * *[A]ll evidence that properly serves to counter the inferences generated by the original evidence should be admissible, but none other.*"

Wigmore, *Evidence* § 15, at 749-50 (Tillers rev. 1983) (emphasis supplied).

In this case, the inferences that defendant wanted the jury to draw from the inadmissible evidence about defendant's character for truthfulness are that he is a truthful person, so he must be telling the truth about the events involving his putative daughter and, therefore, his daughter must be lying.[2] Those are precisely the inferences that the state sought to counter by introducing evidence about the child's character for truthfulness. The disputed evidence about her character for truthfulness is directly responsive to the prejudice done to the state's case by the improper admission of evidence about defendant's character. Admission of the disputed evidence enhanced the accuracy of the factfinding process; it

---

[1] The dissent suggests that Wigmore has a more permissive view on the curative admissibility doctrine than does McCormick. Our reading of the authorities in this area shows that *all* of them take the same position on the doctrine. They would agree that the doctrine permits admission of the evidence at issue in our case, but not the admission of character evidence about other witnesses in the case.

[2] This is not a case in which the defendant argued that someone else committed the acts or that the acts were misconstrued, thereby permitting the jury to consider both the defendant and the child to be truthful. Here, defendant claimed that the victim made up the allegations to punish him for not buying her gifts or to avoid a possible custody problem.

did not serve merely to increase the state's chances of winning by promoting an "erroneous factual adjudication with respect to some other matter."

Mueller and Kirkpatrick make the same points more plainly in two of their recent evidence publications. In *Modern Evidence—Doctrine and Practice*, they explain:

"The open door doctrine does not pave the way for responsive evidence because it fits the same general category as evidence already admitted. For example, admitting hearsay evidence for one side does not mean another can offer hearsay, and admitting one letter does not mean another letter should be admitted, and admitting proof of one deed does not mean others should be provable too. The question in each case is not whether initial proof shares some common quality with proof offered in response. *Rather, it is whether the latter answers the former, and whether it does so in a reasonable way without sacrifice of other important values.*"

Christopher B. Mueller and Laird C. Kirkpatrick, *Modern Evidence—Doctrine and Practice* § 1.4, at 21-22 (1995) (emphasis supplied; footnote omitted). *Accord* Christopher B. Mueller and Laird C. Kirkpatrick, *Federal Evidence* § 12, at 57-58 (2d ed 1994).

The evidence at issue in this case squarely fits the doctrine described by Mueller and Kirkpatrick. The evidence about the child is not admissible simply because it is of the same category as the evidence about defendant. Rather, it is admissible because evidence about the child's character for truthfulness directly answers evidence about defendant's character for truthfulness in this swearing match, and it does so in a "reasonable way without sacrifice of other important values."

The purpose of OEC 608(1) is to leave it to the jury to assess the credibility of a witness without evidence to bolster the witness's credibility, unless the witness's credibility is attacked. The rule is consistent with the general trend that character evidence is not admissible to prove that an individual acted in conformity therewith on a particular occasion, *i.e.*, that because a person is generally truthful, the person was truthful when testifying on the stand. *See* OEC 404. The

ability to rehabilitate a witness whose credibility has been attacked is rooted in Oregon law and in the common law as well. *See* Laird C. Kirkpatrick, *Oregon Evidence* at 343-44 (2d ed 1989). If one side in a swearing match is allowed to bolster his credibility without the required attack, no harm is done by permitting the other side to do the same. Both parties retain equal footing, and the prudential policy against admitting that kind of evidence is not compromised any more than necessary.

The Oregon cases cited by the dissent are not to the contrary. *Wynn v. Sundquist*, 259 Or 125, 485 P2d 1085 (1971), involved rejection of evidence under a straightforward application of the doctrine. The plaintiff brought a wrongful death action against a doctor for the death of the plaintiff's wife. The trial court admitted an autopsy report by a Dr. McMilan on the decedent's death, which report contained hearsay. It also admitted another report by McMilan involving an alleged instance of child abuse by the decedent toward her son, which report also contained hearsay. On appeal, the defendant argued that the latter report should be admissible under the curative admissibility doctrine, because admission of McMilan's autopsy report containing hearsay made it appropriate to admit the other report that contained hearsay. The court had no difficulty rejecting that argument. The only connection between the two documents was that they both contained hearsay. The issues addressed by the two documents had nothing to do with each other: one dealt with the cause of death; the other with the damages caused by the loss of a child-abusing mother. It was a classic application of the principle that admission of hearsay in one instance does not justify admission of unrelated hearsay.

The facts of *State v. Renly*, 111 Or App 453, 827 P2d 1345 (1992), have been adequately described in the dissent. 143 Or App at 308. The critical point is that the evidence that the state sought to have admitted "did not in any way tend to negate, explain or counterbalance any misleading or unfair impression that defendant's evidence could possibly have caused the jury." *Renly*, 111 Or App at 458. In this case, to the contrary, the evidence about the child's character for truthfulness directly counterbalances the misleading or unfair

impression created for the jury by the admission of inadmissible evidence about defendant's character for truthfulness. Nothing in the other case cited by the dissent, *Meislahn v. Demorest*, 48 Or App 631, 617 P2d 322 (1980), has any bearing on the issue raised in this case.

In summary, the central factual issue in this case was whether defendant or the child testified truthfully about the sexual offenses. The testimony about defendant's character for truthfulness and the disputed testimony about the child's character for truthfulness bore directly on that issue. The latter fairly and properly counterbalanced the former. The court did not err in admitting evidence about the child's character for truthfulness.

Affirmed.

**WARREN, J.,** dissenting.

I agree that the trial court erred in allowing evidence of the child's character for truthfulness but disagree that the error may be ignored because it also allowed similar inadmissible evidence concerning defendant's character.

The majority quotes the following language from *Wynn v. Sundquist*, 259 Or 125, 485 P2d 1085 (1971), as the basis for its decision:

> "[W]here one party offers inadmissible evidence, which is received, the opponent may then offer similar facts whose only claim to admission is that they negative or explain or counterbalance the prior inadmissible evidence, *presumably on the same fact, subject matter or issue*." 259 Or at 136. (Emphasis supplied.)

The majority then concludes that the admission of the otherwise inadmissible opinion testimony of the child's truthfulness was proper because it counterbalanced the equivalent inadmissible testimony about defendant.

In *Wynn*, the Supreme Court reversed the trial court on the ground that the trial court overstepped the limits of the "curative admissibility" doctrine. The Supreme Court held that the trial court erred by admitting defendant's evidence because it was not related to the same subject matter

or issue as plaintiff's inadmissable evidence. On that point the Supreme Court said:

> "[I]t is difficult to understand why the admission of hearsay evidence on one subject matter or issue should open the door to the opposing party to offer hearsay evidence on any or all other subjects or issues." 259 Or at 137.

In *Wynn* then, the Supreme Court expressly declined to invoke the curative admissibility doctrine in a situation markedly similar to that presented here. Moreover, the Supreme Court noted that other jurisdictions applied the rule differently, but that, the rule in Oregon was that the opponent's subsequently offered evidence had to "relate to the same subject matter or issue." *Id.*

In quoting the language for the curative admissibility rule from *Wynn*, the majority refers to *State v. Renly*, 111 Or App 453, 827 P2d 1345 (1992). In *Renly*, we reversed the trial court because we concluded that

> "[the state's evidence] did not in any way tend to negate, explain or counterbalance any misleading or unfair impression that defendant's evidence could possibly have caused the jury. Therefore, there was no 'open door' to its admissibility." 111 Or App at 458.

A brief recitation of the facts in *Renly* illustrates the principle. The defendant was convicted of sexual abuse arising from an incident in 1989 at his mother's day care operation. Before that, in 1987, CSD had investigated allegations that defendant had sexually abused two children, also at his mother's day care. After those incidents, defendant moved out of his mother's house. Defendant's mother counseled the mother of the victim in that case, telling her that the defendant would never be left alone with any children and would always be supervised. At trial, defendant used the 1987 allegations and their consequences to explain why he did not have an opportunity to commit the offense charged. The state responded to that evidence, by offering testimony from the CSD caseworker to prove that he committed the 1987 abuse. That evidence was relevant to why defendant's family was motivated to watch him carefully; it had no relevance on the question whether he had an opportunity to commit the abuse. Accordingly, we reversed.

Another case, *Meislahn v. Demorest*, 48 Or App 631, 617 P2d 322, *rev den* 290 Or 249 (1980), provides further instruction as to the application of the rule. Although *Meislahn* is distinguishable from the facts in both *Wynn* and this case, the curious posture of the presentation of the issue does lend some weight to my analysis here. In *Meislahn*, the plaintiff brought suit against defendant for attempted sexual assault. During her case in chief, the plaintiff called as a witness an acquaintance of the defendant, who testified that the defendant had told him he was impotent. In his own case, the defendant testified that he was impotent. The plaintiff then sought to "rebut plaintiff's line of defense" by offering expert psychiatric testimony concerning possible sexual aggression of impotent men; the trial court rejected the plaintiff's proffer. Apparently, the plaintiff introduced the evidence in anticipation of a defensive claim that the defendant had not and did not make: that he could not have committed the assault because he was impotent. We affirmed, holding that it was within the court's discretion to reject the testimony plaintiff offered for two reasons: first, that the plaintiff's evidence was irrelevant as to whether an attack had taken place because defendant never claimed he could not have assaulted her, and second, that the plaintiff invited the defendant's evidence:

> "She opened the door to the collateral issue of defendant's impotency and defendant was entitled to '* * * negative, explain, * * * counterbalance' or, as here, agree with plaintiff's evidence *on the same issue*." 48 Or App at 638. (Emphasis supplied; quoting *Wynn*, 259 Or at 137, and *Freednan v. Cholick*, 233 Or 569, 573-74, 379 P2d 575 (1963).)

Finally, commentators Wigmore and McCormick agree that the evidence admitted under the "curative admissibility" doctrine must relate to the matter shown by the inadmissible evidence submitted by the other party. They differ, however, in defining the scope of that limit; Wigmore advocates a broad approach.

McCormick takes the bright line approach and states that the principle has not been extended to provide the opponent with the opportunity to introduce evidence that

bears on a different issue or that is not relevant to the original inadmissible evidence. McCormick, 1 *Evidence* § 57, 229-32 (4th ed 1992).

Wigmore criticizes McCormick's narrower approach, arguing that "it is doubtful that the principle of curative admissibility can be meaningfully confined to the use of otherwise inadmissible evidence to counter only references regarding material matters that are generated by the original sinner's inadmissible evidence." Wigmore, *Evidence* § 15, 750 (4th ed 1983). Rather, Wigmore asserts that "all evidence that properly serves to counter the inferences generated by the original evidence should be admissible, but none other." *Id.* The reason, Wigmore explains, is that

> "the aim of curative admissibility is to give the party harmed by the introduction of inadmissible evidence an opportunity to counter the inferences that may be drawn from that inadmissable evidence; *he should not be given a license to create prejudice of a different sort, unrelated to the prejudice caused him, merely so that he has a better chance of winning*. Curative admissibility, in short, is designed to improve the accuracy of factfinding and is not designed simply to permit a party to avoid the harm done by giving him an opportunity to improve his chances of winning by increasing the possibility of erroneous factual adjudication with respect to some other matter." *Id.* at 749-50. (Emphasis supplied.)

The inadmissible evidence here was that defendant was a truthful person. The trial court had discretion to permit the state to rebut that evidence directly. The victim's reputation for truthfulness was collateral to that question. The trial court erred in admitting, over proper objection, evidence of the child's truthful character.

I dissent.