Argued and submitted July 6, affirmed in part; vacated in part; remanded in part
for resentencing October 31, 2001

## STATE OF OREGON,
*Respondent,*

*v.*

## MICHAEL SEAN DUGAN,
*Appellant.*

### 99-07-35244; A109737

34 P3d 726

Ronald H. Elzinga argued the cause for appellant. With him on the brief was Meyer & Elzinga, P.C.

Kathleen M. Cegla, Assistant Attorney General, argued the cause for respondent. With her on the brief were Hardy Myers, Attorney General, and Michael D. Reynolds, Solicitor General.

Before Haselton, Presiding Judge, and Deits, Chief Judge, and Linder, Judge.

LINDER, J.

## LINDER, J.

Defendant appeals his convictions of attempted kidnapping in the first degree with a firearm, ORS 163.235(1)(d), unlawful use of a weapon, ORS 166.220(1)(a), and menacing, ORS 163.190(1). We write primarily to address defendant's first assignment of error, in which he challenges the trial court's decision to exclude evidence of defendant's character for truthfulness, nonviolence, and being a law abiding citizen.[1] Also, we accept the state's concession that the evidence was not sufficient to support a finding of guilt on attempted kidnapping in the first degree, which is the basis for defendant's second assignment of error. We affirm in part, vacate the judgment of conviction of attempted kidnapping in the first degree with a firearm, and remand with instructions.

The facts are largely undisputed. On July 8, 1999, the victim was waiting for a bus on the eastbound side of Northwest St. Helens Road. After passing the bus stop in the westbound lane, defendant pulled his truck up alongside the area where the victim was standing and pretended to be in need of directions, although he later testified he was "basically trying to pick up on [the victim]." The victim approached defendant's truck and, after determining that she was not able to help defendant, returned to the area where she had been waiting for the bus, near the rear of defendant's truck. Defendant put his truck in reverse and rolled backward until the cab of his truck was again even with where the victim stood.

The parties presented conflicting accounts about what happened next. The victim testified that defendant said "[e]xcuse me, one last thing," pulled a revolver from underneath a shirt on the seat next to him, pointed it at her face, and ordered her into the truck. Upon seeing the gun, the victim ran away, screaming and flailing her arms in an attempt to stop a passing vehicle. Defendant, in contrast, testified that, due to his work as a carpenter, the front seat of his truck was cluttered with tools and, rather than reaching for a gun,

---

[1] Defendant's remaining assignments of error are either not preserved or do not require discussion.

he was simply clearing the seat as he invited the victim to enter his truck. Defendant testified that he could not understand why the victim ran screaming from his truck.

Two cars stopped to offer the victim assistance. One car, occupied by witnesses Taggart and Becker, pulled over directly behind defendant's truck. Aware that something unusual was happening, Becker wrote down defendant's license plate number. Defendant attempted to wave Taggart and Becker past him. When they remained, defendant drove away.

Detective Law was assigned to investigate the incident. After a record check with Driver and Motor Vehicle Services, Law identified defendant as a suspect and contacted him for questioning. At their first meeting, defendant stated that he was not sure where he was on July 8, 1999, but he believed that he could have been flying. A check with the airport revealed that defendant had been flying on July 9 but not July 8. Defendant then told Law that he may have been coming from a remodeling job near North Lombard in Portland but was "absolutely not" involved in the July 8 incident.

Defendant was subsequently taken into custody and charged with attempted kidnapping in the first degree with a firearm, unlawful use of a weapon, and menacing. Defendant's first trial ended with a hung jury. At his second trial, which is the subject of this appeal, defendant sought to introduce evidence of his character for truthfulness, claiming that the state intended to attack his credibility. The trial court denied defendant's request, concluding that defendant could not offer such evidence until his character for truthfulness had been attacked.

At the close of the state's case, defendant again sought to introduce evidence of his character for truthfulness, which the court again denied. At that point, defendant made an offer of proof. Defense counsel stated that each of defendant's character witnesses would testify to defendant's "law abiding nature[,] nonviolent nature[,] [and] reputation for truthfulness and trustworthiness." The state stipulated to

the contents of the offer of proof. The jury convicted defendant, and defendant appeals, challenging the trial court's ruling excluding his proffered character evidence.[2]

██  We review the trial court's decision to exclude character evidence for abuse of discretion, *State v. Peoples*, 146 Or App 565, 567, 934 P2d 599 (1997), mindful that, if any portion of defendant's offer of proof was inadmissible, it was not error to exclude the whole. *State v. Thomas*, 149 Or App 557, 560-61, 945 P2d 1056 (1997). The state agrees that evidence of defendant's character for law abidingness and nonviolence would be admissible if offered in the form of opinion or reputation evidence. Because defendant's offer of proof sought to admit all three forms of character evidence in an undifferentiated fashion, our inquiry focuses on whether evidence of defendant's character for truthfulness was admissible. For the following reasons, we conclude that it was not.

Our inquiry in this case is governed by OEC 608, which provides, in relevant part:

"(1)   The credibility of a witness may be attacked or supported by evidence in the form of opinion or reputation, but:

"* * * * *

"(b)   Evidence of truthful character is admissible only after the character of the witness for truthfulness has been attacked by opinion or reputation evidence or otherwise."

Thus, a defendant may not introduce evidence in support of his or her character for truthfulness unless it has first been attacked in the manner specified in subsection (b).

██  Here, defendant argues that the state repeatedly attacked his character for truthfulness throughout the trial,

---

[2] Defendant made an additional attempt, before the close of the state's case, to introduce evidence of his character for nonviolence and being a law abiding citizen. Defendant made no offer of proof at that point. The trial court, believing that defendant was seeking to admit evidence of specific conduct, denied his motion. Because defendant did not make a separate offer of proof for his evidence of nonviolence and being law abiding at that intermediate point, we discuss only the motion made at the end of the state's case, at which point defendant made an offer of proof that combined all three forms of character evidence. *See* OEC 103(1)(b) (requiring offers of proof to claim evidential error).

asserting first that the state did so in its opening statement and closing argument. By its terms, however, OEC 608(1)(b) applies only to attacks by "opinion or reputation evidence or otherwise." OEC 608(1)(b). The attack, then, must be in the form of opinion or reputation testimony or testimony about "prior instances of conduct by the impeached witness." *State v. Carr*, 302 Or 20, 26, 725 P2d 1287 (1986) (construing "or otherwise" language in OEC 608(1)(b)). In other words, whether by opinion, reputation, "or otherwise," the attack must be in the form of *evidence*. An attorney's arguments are not evidence, *State v. Green*, 140 Or App 308, 317 n 11, 915 P2d 460 (1996); *see* ORS 41.010 (judicial evidence is the legally sanctioned means of ascertaining the truth respecting a question of fact), as the jury was instructed in this case. *See* UCrJI No. 1002 ("opening statements and closing arguments of the attorneys * * * are not part of the evidence"). Because OEC 608 is concerned with the admission of evidence at trial, its provision for the rehabilitation of a witness's character for truthfulness was not triggered by the parties' opening statements and closing arguments.

■    Defendant next argues that the state attacked his character for truthfulness in its case-in-chief, claiming that the state presented "evidence of a classic indication of guilt: the defendant's untruthful denial of his presence at the scene of the incident." In particular, Detective Law testified that defendant first stated that he had no recollection of the events of July 8, but defendant thought that he may have been flying at the time. When further investigation revealed that defendant had not flown on July 8, defendant stated that he may have been working at a job site near North Lombard in Portland, thus explaining why his truck was seen on St. Helens Road. Law further testified that when he asked whether defendant was involved in the July 8 incident, defendant responded "absolutely not." Neither Law, nor any of the state's witnesses, offered an opinion as to defendant's general character for truthfulness. Nor did Law for that matter offer an opinion as to defendant's truthfulness in answering Law's questions.[3]

---

[3] In contrast, when asked on cross-examination about those various accounts, defendant testified that he lied to Detective Law.

■ As stated above, OEC 608(1)(b) requires an attack by opinion or reputation or other evidence on the witness's character for truthfulness. Merely contradicting a witness's testimony does not constitute an "attack" on the witness's character for truthfulness. *Carr*, 302 Or at 25. *See also State v. Adonri*, 143 Or App 298, 301, 923 P2d 658, *rev den* 324 Or 488 (1996) (error to allow evidence of witness's character for truthfulness when defendant had only testified to witness's motives to lie without offering opinion as to witness's character for truthfulness). Rather, the phrase "attacked by opinion" refers to "an attack on the credibility of one witness by testimony in the form of opinion by a second witness that the first witness's *character* for truthfulness is bad." *Carr*, 302 Or at 25 (emphasis in original). OEC 608(1)(b), including its reference to attacks by opinion or reputation evidence "or otherwise," does not reach situations where a witness's testimony simply suggests, or permits the jury to infer, that another witness is lying. *Id.* at 26.

Here, Law merely recited the various inconsistent accounts that defendant gave regarding his whereabouts on July 8. Neither Law nor any other witness for the state offered an opinion regarding defendant's character for truthfulness. Because the state did not attack defendant's credibility in the specific way required by OEC 608, defendant was not entitled to avail himself of OEC 608 to offer evidence of his character for truthfulness.

■ Defendant's next argument leads to the same conclusion. At trial, defendant exercised his constitutional right not to testify. In lieu of taking the stand, defendant offered a transcript of his testimony from the first trial, which the trial court admitted under the hearsay exception found in OEC 804(3)(a) for former testimony. Defendant argues that, because he "testified through hearsay," he was entitled to introduce evidence of his character for truthfulness to bolster his credibility as a hearsay declarant. In support of his position, defendant relies on OEC 806, which provides, in part:

> "When a hearsay statement * * * has been admitted in evidence, the credibility of the declarant may be attacked, and *if attacked* may be supported, by any evidence which

would be admissible for those purposes if the declarant had testified as a witness." (Emphasis added.)

The problem with defendant's position is that OEC 806 requires a proper attack on a hearsay declarant's credibility as a condition of rehabilitating credibility. Defendant's argument therefore leads back to OEC 608. As discussed above, the state did not attack defendant's character for truthfulness in the specific way that OEC 608(1)(b) requires. Consequently, the predicate to admissibility of defendant's character evidence under OEC 806 is similarly missing.

■ Defendant argues, even so, that the trial court should have exercised its discretion under OEC 611 to alter the order of evidence to allow defendant to present evidence of his character for truthfulness. OEC 611 provides, in part:

"The court shall exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to make the interrogation and presentation effective for the ascertainment of truth, avoid needless consumption of time and protect witnesses from harassment or undue embarrassment."

Even assuming—without deciding—that OEC 611 provides a trial court with authority to disregard the specific order of proof provisions of OEC 608(1)(b) and OEC 806, there is a fatal threshold flaw in defendant's argument. OEC 611 is concerned only with the mode and order of the presentation of evidence, not its admissibility. Defendant's evidence of his character for truthfulness was admissible only if it was attacked in the way contemplated by OEC 608, as already discussed. There never was such an attack in this case, either in the state's case-in-chief or in its case in rebuttal. The mode and order of presenting evidence that defendant wanted to present are beside the point given that the evidence in question was not admissible. For all of the foregoing reasons, the trial court correctly excluded the evidence of defendant's character for truthfulness.

■ Having determined that evidence of defendant's character for truthfulness was inadmissible, we next consider whether defendant adequately segregated that inadmissible portion of his offer of proof from the remainder. When defense counsel made an offer of proof at the close of

the state's case, he stated that each of defendant's character witnesses would testify to defendant's character for being law abiding, nonviolent, and truthful. Although the trial court already had ruled that evidence of defendant's character for truthfulness would not be admitted, defendant did not make a separate offer regarding his character for being law abiding and nonviolent. Because defendant did not adequately segregate the inadmissible portion of his offer of proof from the remaining portions, the trial court correctly excluded the whole. *Thomas*, 149 Or App at 560-61.

In his second assignment of error, defendant argues that there was no evidence to prove defendant's intent to terrorize the victim, and that the trial court therefore erred in denying his motion for judgment of acquittal on the charge of attempted kidnapping in the first degree with a firearm, ORS 163.235(1)(d).[4] The state concedes the trial court erred in that respect, and we agree. *See State v. Lamb*, 161 Or App 66, 69, 983 P2d 1058 (1999) (concession of error in criminal case is entitled to great weight but is not binding). There is no evidence in the record that defendant attempted to kidnap the victim with the purpose of terrorizing her. *See State v. Nulph*, 31 Or App 1155, 1165, 572 P2d 642 (1977), *rev den* 282 Or 189 (1978) (proof of intent to terrorize requires "evidence of a purpose to do more than that which is necessary to take or confine by force, threat or deception"). We further agree with the state that, in convicting defendant of attempted kidnapping in the first degree, the jury necessarily found defendant guilty of attempted kidnapping in the second degree. The judgment therefore should be modified to reflect conviction of that lesser offense. *See State v. Swaggerty*, 15 Or App 343, 349, 515 P2d 952 (1973).

We decline the state's invitation, however, to simply modify the judgment and affirm defendant's sentence without remand. The appropriate sentence to impose on the lesser conviction is a matter that is within the sentencing court's

---

[4] ORS 163.235 provides, in part:

"(1) A person commits the crime of kidnapping in the first degree if the person violates ORS 163.225 with any of the following purposes:

"* * * * *

"(d) To terrorize the victim or another person."

discretion. ORS 161.610(5)(b). It may be, as the state asserts, that the trial court will decide to impose the same sentence on remand.[5] Even so, that is for the trial court to determine in the first instance.

Defendant's convictions for unlawful use of a weapon and menacing affirmed; judgment of conviction of attempted kidnapping in the first degree with a firearm vacated; remanded for entry of judgment convicting defendant of attempted kidnapping in the second degree with a firearm under ORS 163.225, and for resentencing.

---

[5] Because the jury found that defendant committed the crime of conviction with a firearm, the trial court sentenced defendant pursuant to ORS 161.610, establishing minimum sentences for use of a firearm during the commission of a felony. Under ORS 161.610(5)(b), the gun minimum sentence was, and remains, discretionary with the trial court because this is defendant's first conviction of a crime for which a gun minimum is authorized.