Argued and submitted September 29, 2000, affirmed July 10, 2002

# STATE OF OREGON,
*Respondent,*

*v.*

# DANIEL EDWARD RYEL,
*Appellant.*

97-0705; A102860

51 P3d 8

Daniel M. Carroll, Deputy Public Defender, argued the cause for appellant. With him on the brief was David E. Groom, Public Defender.

Ann Kelley, Assistant Attorney General, argued the cause for respondent. With her on the brief were Hardy Myers, Attorney General, and Michael D. Reynolds, Solicitor General.

Before Edmonds, Presiding Judge, and Armstrong, Judge, and Ceniceros, Senior Judge.

EDMONDS, P. J.

Armstrong, J., dissenting.

**EDMONDS, P. J.**

Defendant appeals from convictions for manslaughter in the first degree, ORS 163.118, attempted murder, ORS 163.115, and assault in the first degree, ORS 163.185. He makes three assignments of error: (1) "The trial court erred when it excluded evidence proffered by defendant of pertinent traits of character of the victims and a witness indicating that those persons had a propensity for violence." (2) "The trial court erred when it instructed the jury, over defendant's objection, that it must first acquit defendant of the charged offenses before it could consider any lesser-included offenses." (3) "The trial court erred by imposing Ballot Measure 11 sentences following defendant's convictions for manslaughter in the first degree, attempted murder and assault in the first degree." We reject defendant's second and third assignments of error without discussion based on *State v. Horsley*, 169 Or App 438, 8 P3d 1021 (2000), *rev den* 331 Or 692 (2001), and *State v. Thorp*, 166 Or App 564, 2 P3d 903 (2000), *rev dismissed* 332 Or 559 (2001). On defendant's first assignment of error, we also affirm.

On the day in question, defendant was in the area around Clackamas Town Center Mall with two friends. As they left a restaurant near the mall, they became involved in a verbal exchange with Andrew Gutzmann, Brian Christy, and Allen Deatherage. The argument ended without any physical contact, and defendant and his friends continued walking toward the mall. As they neared the entrance to the mall parking area, a vehicle pulled up behind them and stopped in the middle of the street. Gutzmann and Christy got out of the car and approached defendant and his friends. Gutzmann and one of defendant's friends began to argue again. Deatherage also got out of the car. There is conflicting evidence as to what occurred thereafter. Defendant and his friends all testified that Gutzmann and Christy each struck one of defendant's friends. While Christy denied striking defendant's friend, he could not recall whether Gutzmann did so. Other eyewitnesses did not recall seeing any person in either group shove or strike anyone. Defendant, while standing a short distance away, raised his arm and fired five shots from a revolver. Gutzmann was hit twice and died at the

scene. Christy was struck once in the left arm. The convictions on appeal arise out of defendant's shooting of Gutzmann and Christy.

Defendant's defenses to the charges were that he shot Gutzmann and Christy in self-defense or in defense of the other people in his group. In support of those defenses, he sought to obtain evidence about the character and prior acts of Gutzmann's group. Before trial, defendant asked for a continuance, so that he could conduct additional investigation into an unrelated October 1996 incident involving the police, Deatherage, and Christy. As a result, the state filed a pre-emptive motion to preclude defendant from offering any evidence about any past incidents involving the victims and Deatherage. In its written motion, it asserted that OEC 404(2)(c) did not permit the admission of the evidence of the other incident that involved Deatherage.[1] The state orally argued its motion immediately before trial and relied again on OEC 404(2)(b) and OEC 405 for exclusion, arguing first that Deatherage was not a victim, a fact that would mean that testimony about his character would not be admissible under OEC 404(2)(b),[2] and, second, that character evidence about Deatherage, to the extent it was relevant, could not be admitted in the form of specific acts, under OEC 404(2)(c) and OEC 405.[3] At defendant's request, the court deferred its ruling until after the state had put on its case-in-chief. After the

---

[1] OEC 404(2)(c) provides that evidence of a person's character is not admissible for the purpose of proving that the person acted in conformity therewith on a particular occasion except as provided in OEC 607 to OEC 609. Those statutes pertain to the impeachment of a witness through character evidence. Apparently, the state did not intend to call Deatherage as a witness.

[2] OEC 404(2)(b) provides, in part, that evidence of a person's character is not admissible for the purpose of proving that the person acted in conformity therewith on a particular occasion except when offered by an accused to rebut evidence that the victim was not the first aggressor.

[3] OEC 405 provides:

"(1) In all cases in which evidence of character or a trait of character of a person is admissible, proof may be made by testimony as to reputation or by testimony in the form of an opinion. On cross-examination, inquiry is allowable into relevant specific instances of the conduct of the person.

"(2)(a) In cases in which character or a trait of character of a person is admissible under ORS 40.170(1), proof may also be made of specific instances of the conduct of the person.

"(b) When evidence is admissible under ORS 40.170(3) or (4), proof may be made of specific instances of the conduct of the person."

state rested, the court took up the issue again. Defendant offered documents that described the October 1996 incident with Deatherage and another unrelated December 1996 incident in which Gutzmann was the aggressor.

The following dialogue then occurred between defense counsel Burris, prosecutor Miller, and the court:

"MR. BURRIS: Your Honor, the exhibits make reference to a number of individuals, a Mr. Jimmie Dozark, Harold Dozark, Brian Jennings, Officer Pete Simpson, Officer Dan Thompson, and there's another individual by the name of Marion, M-A-R-I-O-N, Carman, C-A-R-M-A-N, who's not named in the reports but he's one of the persons who may have witnessed a portion of the events in [Exhibit] 153, which we'll talk about in a moment.

"These individuals are all prospective witnesses on behalf of the defendant. The report 150, Your Honor, has reports which pertain to an incident from October of 1996 in which Mr. Deatherage and Mr. Christy were in a vehicle. They followed another vehicle, they stopped. They confronted the persons who had been in that vehicle. Mr. Deatherage made representations, through word and conduct, that he had a weapon and was about to use that weapon. And the persons, the alleged victims in that particular matter, were afraid and believed that he had a weapon and was about to use the weapon.

"The circumstances, a pattern. What happened at the Town Center? There was an initial confrontation, or what they believed was a confrontation or something they didn't like. They followed these people. They confronted these people. There's a representation made by Mr. Deatherage that he had a gun and was about to use the gun. These people were all in fear, genuine, legitimate fear that they had a gun.

"Mr. Harold Dozark obtained a weapon and he was—he was afraid that they had—that they had a gun. That matter was investigated, among others, by Officer Pete Simpson of the Portland Police Bureau.

"Officer Simpson and Officer Thompson were also involved in investigating a matter with Mr. Gutzmann in December of 1996 wherein there's an allegation from someone he had stolen a stereo. And during the course of this incident, there was a confrontation and Mr. Carman,

Marion Carman, who was present at the time, observed Mr. Gutzmann to have a gun and he was being threatening.

"Our position, Your Honor, is that these prior incidents are admissible for the same reasons that the State argued the Benson High School matter was admissible against [defendant], except our position is that these incidents, pattern, are much more closely related to [*State v. Johns*, 301 Or 535, 725 P2d 312 (1986),] and that analysis, what occurred in this case, than the prior Benson incident involving [defendant], which really is quite distinguishable.

"* * * * *

"MR. MILLER:   * * * Character evidence as the defendant seeks to get in, showing a propensity toward violence or propensity for a certain ability is only admissible if it's an essential element of claim or defense. It is not an essential element of claim or defense in this case, anybody's propensity for anything is not an essential element in this case.

"* * * [*State v. Whitney-Biggs*, 147 Or App 509, 936 P2d 1047 (1997),] quite clearly [shows] that the defendant's state of mind only allows prior evidence of prior bad acts if the defendant knows about those or is aware of them in some fashion.

"There's no claim by the defense that the defendant in this case had any knowledge of who he was dealing with. Certainly there's no claim that he knew about any prior episodes of any kind. And if that's the fact, then it's not relevant to his state of mind, and it's inadmissible. * * *

"* * * * *

"THE COURT:   Mr. Miller, so the record is clear, given the defendant's proffer, I take it you are expanding your State's motion *in limine* to prohibit discussion of those events. Your motion *in limine* is limited to a single October 3rd situation.

"* * * * *

"MR. MILLER:   And we would expand that to include all proffered evidence by the defense of the victim or anyone in the victims's party of other prior—any prior conduct on—prior to March the 27th.

"THE COURT:   The State's motion *in limine* will be allowed. I know there's an October 3rd, 1996, incident and

there appears to be a December 1996 incident which has an unspecified date.

"* * * * *

"THE COURT:   * * * I think it's improper character evidence under the Oregon Evidence Code.

"MR. BURRIS:   That I won't be allowed to express an opinion about Mr. Deatherage or Mr. Gutzmann or Mr. Christy's character or reputation for violence?

"THE COURT:   It's not my understanding that's what you were requesting. It's my understanding you were requesting evidence of specific incidents.

"MR. BURRIS:   Okay. I'm sorry, then. In the alternative, Your Honor, that's—that would be the second part of the proffer.

"THE COURT:   Mr. Miller, do you want to respond to that?

"MR. MILLER:   Your Honor, as I pointed out before, the—if the propensity for violence is an essential element of the claim or defense that's admissible except for specific instances, my argument was that there is no issue in this case about the victim's propensity for violence and, therefore, no evidence can be issued on that.

"THE COURT:   As I recall, the only evidence before the Court on whether or not [defendant] knew any of these three people is that they never met before. Is that accurate or not accurate?

"MR. BURRIS:   That's correct, Your Honor.

"THE COURT:   I think, Mr. Burris, your question, does that mean you are prohibited from asking character evidence questions about the propensity of violence of Mr. Gutzmann or the other two people, and the answer to your question is yes. The motion *in limine* will be granted and you will be prohibited from asking those questions."

The next morning, defendant again broached the issue with the court. He offered more exhibits, and the following occurred:

"MR. BURRIS:   I have some additional matters I would like to offer in support of our prior proffers, Your Honor. I have marked for the Court as Exhibit 153-P, a

report by Mr. Jay Myers outlining an interview with Mr. Jimmie Dozark and Mr. Harold Dozark, offer as part of our proffer. A copy has been previously provided to Mr. Miller and Ms. Landers, Your Honor, and an additional copy provided this morning.

"\* \* \* \* \*

"MR. BURRIS: \* \* \* in conjunction with prior exhibits offered as part of our proffer 150, 151 and 152. We would renew our request at this time under Evidence Code 404, to offer the testimony concerning the *prior acts of violence* by Mr. Deatherage and Mr. Christy and Mr. Gutzmann.

"And as an alternative, Your Honor, would renew our proffer under Evidence Code 405, to offer evidence of the character of Mr. Deatherage, Mr. Christy and Mr. Gutzmann for violence.

"Additionally, Your Honor, the Court is aware of Mr. Jay Myers. He's interviewed Mr. Jimmie Dozark, Mr. Harold Dozark, Brian Jennings, Officer Pete Simpson, Officer Dan Thompson, and Mr. Marion Carman, C-A-R-M-A-N. And based upon his interviews, Your Honor, if these witnesses were called, Mr. Dozark would express an opinion that Mr. Deatherage is violent; Mr. Harold Dozark would express an opinion that Mr. Deatherage is violent; Mr. Jennings would express an *opinion that Mr. Deatherage is* violent; [O]fficer Pete Simpson would testify he's acquainted with Mr. Deatherage and Mr. Christy and Mr. Gutzmann, would express an opinion that all three are violent and that all three have a reputation being violent; Officer Dan Thompson would say he's acquainted with Mr. Deatherage, Mr. Christy, Mr. Gutzmann, would express an opinion all three are violent and all three have a reputation for being violent; Mr. Carman would state he's acquainted with Mr. Gutzmann, would express an opinion that Mr. Gutzmann is violent.

"THE COURT: And you are seeking to introduce this in support of your self-defense defense?

"MR. BURRIS: Right.

"THE COURT: And there's no testimony and no proffer that [defendant] was aware of the character or the reputation of any of the persons prior to the incident?

"MR. BURRIS: That's correct.

"* * * * *

"THE COURT: The prior objection, grounds for objection, will be sustained."

On appeal, defendant argues:

"The evidence at issue here was relevant for three purposes: (a) to support evidence and testimony offered by defendant that the actions by the victims and/or one of the state's witnesses caused defendant to reasonably fear that these persons were armed and about to use deadly force against him and/or a third person; (b) to establish the reasonableness of defendant's decision to use deadly force under the circumstances; and (c) to rebut testimony offered by the state indicating that the victims were not the first aggressors in the incident."

The state counters:

"The trial court did not commit reversible error when it excluded evidence of prior bad acts by a witness and the victims and opinion or reputation evidence about a witness and the two victims. In the trial court, defendant offered evidence of prior bad acts against all three men without distinguishing between them. The trial court properly determined that no authority would authorize the admission of evidence concerning prior bad acts by a witness or even by the victims. Defendant's later offer of proof about opinion or reputation evidence for violence did not distinguish between the three men and under no theory would such evidence be admissible against a witness. Because defendant's offer of proof included inadmissible evidence, and because defendant made no effort to separate the inadmissible evidence from the arguably admissible evidence, this court should not reverse the trial court. It is well-settled law that it is a defendant's obligation to separate admissible evidence from inadmissible evidence. In the absence of a separation, the trial court should be affirmed if any of the excluded evidence was inadmissible, as it was here."

In *Pumpelly v. Reeves*, 273 Or 808, 812, 543 P2d 682 (1975), the Supreme Court observed:

"It is well established that when a single offer of proof contains both admissible and inadmissible matter, as in this case, it is not error to reject the entire offer."

The facts in *Pumpelly* are instructive regarding defendant's offer of proof in this case. In *Pumpelly*, the plaintiff brought an action for personal injuries as a result of a motorcycle/automobile accident. He testified that he was a self-employed carpet layer and did carpet laying jobs for different retail stores, including Western Lane Furniture and Fashion Floors. He told the jury that, as a result of his injuries from the collision, he was unable to use a tool required to stretch carpets, and he sought to introduce evidence of his lost earnings. The defendant objected and, after the defendant's objections were sustained, the plaintiff's attorney made the following offer of proof:

> " 'Had the plaintiff been allowed to proceed along its line of questioning the plaintiff would have introduced evidence from the plaintiff who is on the stand that the months of—I think he testified these months were the best months—and that the principal amount of income in a carpet business comes in those months. If there was business available, specifically, from two principal sources, Fashion Floors and Western Lane Furniture, that the plaintiff could not have performed that business, and the plaintiff would have introduced two additional witnesses, Mr. Henry Johnson of Western Lane Furniture, who would have testified, had the plaintiff been able to work he would have gotten the business of Western Lane Furniture and that that business would have been substantial throughout the summer of 1973, specifically, June, July and August. Further, the plaintiff would have produced a Mr. Michael Miles who would have testified that the business was referred to him when the plaintiff was incapacitated and unable to work; that he did the work concerned with the Western Lane Furniture and concerned with Fashion Floors and that that work totaled, the work that he did, the testimony would indicate, the plaintiff would have had $3,439 in June, $1172.14 in July, and that's the combination of the Western Lane Furniture and Fashion Floors. Now, in August we have it broken down: Western Lane Furniture, $4422, and Fashion Floors, in August $1811.06.' " *Pumpelly*, 273 Or at 810 (emphasis omitted).

The trial court sustained an objection to the introduction of the evidence. The jury returned a verdict for the defendant, and the plaintiff appealed, assigning as error the court's ruling on the evidence. The defendant argued that the

issue was controlled by the holding in *Jenks v. Larimer*, 268 Or 37, 42, 518 P2d 1301 (1974), that an offer of proof that does not include expenses of operation is inadmissible to prove loss of net earnings. In rejecting the plaintiff's assignment of error, the Supreme Court reasoned that the plaintiff must have had some operating expenses for the time period during which he could not work. Consequently, it ruled that the trial court did not err in excluding the plaintiff's evidence because the offer of proof contained both admissible evidence, *i.e.*, Johnson's and Miles's testimony about the work that the plaintiff could have done, and inadmissible evidence, *i.e.,* the *gross* amounts of payments that the plaintiff would have received from Western Lane Furniture and Fashion Floors for that work. There is no suggestion in *Pumpelly* that the trial court should have sorted out *sua sponte* the inadmissible testimony from the admissible testimony of each witness. Because the entire offer of proof was "tainted" by the inadmissible portions of evidence, the trial court did not err by rejecting it.

■     In this case, defendant's offers of proof suffer from a similar defect. As in *Pumpelly*, defendant never offered the testimony of each witness separately; rather, he offered the testimony of all of the witnesses together in one offer of proof, without segregating out the individual testimony of each witness. Also, as in *Pumpelly*, the offer contained both admissible and inadmissible evidence. The offered statements of Jimmie Dozark, Harold Dozark, and Brian Jennings were all properly excluded by the trial court because they each contained, among other things, statements about the reputation of Deatherage, a nonvictim. As the state pointed out in its motion to exclude, evidence is admissible under OEC 404(2)(b) only as to a *victim's* character trait. Similarly, Pete Simpson's and Dan Thompson's offered statements included inadmissible reputation evidence about Deatherage and, under the applicable case law, they suffer from the same defect. Only witness Carman's proffered testimony contained evidence solely about a victim, but even it was offered in two forms—observations about a specific instance of conduct and an opinion of reputation for violence. As defense counsel correctly conceded to the trial court, testimony about a specific

instance of conduct is inadmissible under OEC 405 except under circumstances that do not exist here.[4]

■■ The case of *Morey, Adminstratrix v. Redifer et al*, 204 Or 194, 282 P2d 1062 (1955), is also instructive as to why defendant's offers of proof do not support admission of the evidence. In *Morey*, the defendant assigned error to the trial court's sustaining of the plaintiff's objections to testimony given by witness Kuensting, a stenographic reporter. Kuensting had reported a proceeding before the State Industrial Accident Commission in which E.B. DeFeyter appeared as a witness. The Supreme Court rejected the assignment of error because

> "[a]n offer of proof was not separably made *as to each question and answer* to which the witness Kuensting's attention was directed. On the contrary, a single offer of proof was made incorporating the entire record of DeFeyter's examination as a witness before the commission. Many of the answers given by DeFeyter * * * amounted to mere conclusions or opinions involving mixed questions of law and fact. Such answers would have been objectionable in any circumstances and subject to a motion to strike. * * *

> "For the reason that the offer of proof contained testimony that was clearly objectionable, if for no other reason, the offer was properly rejected by the trial court. *The objectionable portions contaminated the whole. The trial court was not required to separate the good from the bad." Morey*, 204 Or at 205-07 (emphasis added).

The *Morey* court's ruling—that it is incumbent on *a party* to offer separate questions and answers in separate offers of proof—demonstrates the policy underlying the rule that an offer of proof must contain only admissible evidence. Offers of proof are like other evidence that is offered and objected to during a trial. One purpose of an offer of proof is to provide a record on review that enables appellate courts to

---

[4] It could be argued that defendant made separate offers of proof regarding Carman's "specific event" testimony and his "opinion" testimony. Even if that is the case, Carman's testimony was offered as part of the offer of proof of the testimony of the other witnesses and was not separated out by defendant and presented to the trial court for its discrete consideration. Moreover, Carman's testimony was not offered under OEC 404(2)(b).

determine whether the ruling was erroneous. *State v. Affeld*, 307 Or 125, 128, 764 P2d 220 (1988).

> "Another purpose of an offer of proof is to assure that the trial court can make an informed decision. An offer of proof permits the parties to raise additional arguments, if appropriate, and gives the court an opportunity to reconsider its ruling and correct any error." *State v. Olmstead*, 310 Or 455, 461, 800 P2d 277 (1990).

When faced with an objection, a trial court must consider the proffered evidence in light of the applicable rules of evidence and the reason for which the evidence is offered. Here, both of defendant's offers deprived the trial court of the ability to make the informed ruling that the consideration of an offer of proof requires, whether defendant's offer is considered as a unitary offer of testimony or as separate offers of each witness's testimony.

■  The second problem with defendant's offer of proof is that he did not tell the trial court the rule of evidence under which he was making his offers of proof. Defendant told the trial court that the evidence was admissible under "Evidence Code 404," but there are a number of subsections to OEC 404 that constitute discrete rules of evidence. The trial court's ruling under one subsection of OEC 404, OEC 404(1), was not error.[5] Evidence of the reputations of Gutzmann and Christy was properly excluded under that rule because defendant was unaware of their reputation when he shot them, and defendant's knowledge of their reputations is what would have made the evidence relevant to his defenses. Defendant never told the trial court that any of the testimony of the witnesses was admissible under OEC 404(2)(b). On both occasions after defense counsel made his offers of proof, the trial court inquired whether defendant was aware of each victim's reputation or character, and defense counsel confirmed that there was no evidence demonstrating that fact. Defense counsel's responses to the court are a tacit concession that the evidence he was offering in his offer of proof was offered under OEC 404(1). He never alerted the court to any other

---

[5] OEC 404(1) provides, in part:

"Evidence of a person's character or trait of character is admissible when it is an essential element of the charge, claim or defense."

provision of OEC 404. For this reason as well, the trial court did not err in excluding the offers.

■       Apparently, the dissent would require the trial court to pore through the offers and the four subsections of OEC 404 to pick out from the individual testimony of each potential witness which testimony from that witness might be admissible and to determine under which subsection of OEC 404 it would be admissible.[6] The process urged by the dissent is contrary to the well-recognized rule that it is the burden of the party offering the evidence, and not the trial court, to sort out which evidence is admissible and which is inadmissible. *See Morey*, 204 Or at 207. Not only was the evidence of testimony from Jimmie Dozark, Harold Dozark, Jennings, Simpson, Thompson, and Carman all offered together as one offer of proof, but it combined testimony about a nonvictim with testimony about victims. None of the evidence was admissible under OEC 404(1) because defendant was unaware of the reputations of Gutzmann and Christy. Moreover, although Carman's proffered testimony contained evidence solely about a victim, it was offered in both admissible and inadmissible forms (observations about a specific instance of conduct in violation of OEC 405 and in an opinion of reputation for violence). Finally, defendant never urged the admission of the evidence under OEC 404(2)(d); rather, he sought admission under OEC 404 generally. Even when questioned by the trial court, defendant implicitly directed the court's attention to OEC 404(1) on two different occasions, and the trial court correctly ruled under that rule. We conclude that, in light of the combination of all of those circumstances, the trial court did not err in excluding the evidence offered by defendant. Because of the lack of a proper offer of proof,

_____

[6] In our view, the dissent's reliance on *State v. Cunningham*, 179 Or App 359, 40 P3d 1065 (2002) is misplaced. The dissent relies on *Cunningham* for the proposition that the trial court in this case should have parsed defendant's offer of proof into separate offers of proof and then considered the admission of the evidence under OEC 404(2)(b) as well as under OEC 405. The dissent believes that the trial court had such an obligation, even though defense counsel did not make such a request and even though defense counsel directed the trial court to OEC 405 and only orally argued in reference to it. In contrast, defense counsel in *Cunningham*, as well as the state, made discrete arguments as to the admissibility of each item of evidence, rather than asking the court to view the proferrred evidence holistically.

defendant cannot prevail on his first assignment of error on appeal.

Affirmed.

**ARMSTRONG, J.,** dissenting.

The majority concludes that defendant failed adequately to preserve his objection to the trial court's decision not to admit evidence about the victims' violent characters. In my view, defendant's offer of proof was sufficient and the trial court erred in excluding that evidence. I further conclude that the error was prejudicial and that defendant's convictions for involuntary manslaughter, attempted murder, and assault should therefore be reversed and remanded for a new trial. Accordingly, I dissent.

There was evidence at trial from which the jury could find that defendant fired his weapon in self-defense or in defense of the members of his group. Defendant's witnesses testified that, in their initial encounter with the group of which the victims were members, one of its members gestured as if he had a gun and also made threats that he would use a gun against defendant and the members of his group. Defendant testified that he saw what he believed to be a gun in Christy's waistband.

Defendant asserted at trial that he fired the shots from his revolver in self-defense[1] and in defense of his friends in an effort to stop the altercation between the two groups of

---

[1] ORS 161.209 provides:

"Except as provided in ORS 161.215 and 161.219, a person is justified in using physical force upon another person for self-defense or to defend a third person from what the person reasonably believes to be the use or imminent use of unlawful physical force, and the person may use a degree of force which the person reasonably believes to be necessary for the purpose."

ORS 161.219 provides limitations on the use of deadly force in self-defense:

"Notwithstanding the provisions of ORS 161.209, a person is not justified in using deadly physical force upon another person unless the person reasonably believes that the other person is:

"(1) Committing or attempting to commit a felony involving the use or threatened imminent use of physical force against a person; or

"(2) Committing or attempting to commit a burglary in a dwelling; or

"(3) Using or about to use unlawful deadly physical force against a person."

people, because he feared that Deatherage or Christy might use guns against him and the members of his group. Before trial, the state sought to exclude evidence of alleged prior acts of violence by Deatherage and Gutzmann, both of which involved the threatened use of a gun. At the close of the state's case-in-chief, the court ruled that that evidence would be excluded.

Defendant then sought to offer evidence of the reputation and violent character of Deatherage and of the two shooting victims, Christy and Gutzmann. The trial court excluded the evidence on the ground that defendant was not aware of the reputation and character of those people at the time of the incident. On appeal, defendant challenges the exclusion of the evidence of both prior specific acts of violent conduct and the violent reputation and character of Deatherage and the victims.

The admissibility of that evidence is governed by OEC 404, which provides, in relevant part:

"(1)   Evidence of a person's character or trait of character is admissible when it is an essential element of the charge, claim or defense.

"(2)   *Evidence of a person's character is not admissible for the purpose of proving that the person acted in conformity therewith on a particular occasion, except*:

"* * * * *

"(b)   *Evidence of a pertinent trait of character of the victim of the crime offered by an accused*[.] * * *

"* * * * *

"(3)   Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." (Emphasis added.)

It is not disputed that evidence of a person's propensity or reputation for violence is character evidence under

OEC 404. Defendant acknowledges that *State v. Whitney-Biggs*, 147 Or App 509, 526, 936 P2d 1047, *rev den* 326 Or 43 (1997), held that character evidence of the type that he sought to offer is not admissible under OEC 404(1) because he had no prior knowledge of the victims' or Deatherage's alleged violent character and no prior knowledge of the acts that he sought to offer as evidence of their character. He submits that *Whitney-Biggs* was wrongly decided and should be overruled. If I were writing for the majority, I would reject that argument and adhere to our holding in *Whitney-Biggs*. Accordingly, I agree with the majority that defendant's evidence is inadmissible under OEC 404(1).

Defendant asserts that the character evidence is nonetheless admissible under OEC 404(2)(b), which permits a defendant to offer evidence of a pertinent trait of character of the victim of the alleged crime for the purpose of proving that the victim acted in conformity with that character trait on a particular occasion. Defendant asserts that the evidence of the victims' and Deatherage's violent character is admissible under OEC 404(2)(b) to prove that defendant reasonably acted in self-defense in firing his weapon, because it would tend to establish that defendant reasonably feared that the victims and Deatherage were armed and about to use deadly force. It would further rebut the state's evidence that the victims were not the initial aggressors in the incident.

I reject defendant's contention that evidence concerning Deatherage's propensity for violence is admissible under OEC 404(2)(b). That subsection refers specifically to the character of the *victim of the crime*. Defendant does not explain to us how Deatherage was a victim of the crime for which defendant contends that he acted in self-defense.

I reach a different conclusion, however, with regard to evidence of the two victims' violent character and reputation, and here is where I part ways with the majority. Under OEC 404(2)(b), defendant was entitled to present evidence of Gutzmann's and Christy's character and reputation for violence. That evidence was indisputably relevant to defendant's self-defense claim. The state concedes that

"[a]rguably, the trial court could have admitted some reputation or opinion evidence about the victims' characters for violence under OEC 404(2)(b) and OEC 405(1)." I further conclude that the proffered character evidence regarding Gutzmann and Christy was admissible under OEC 405, which provides the methods by which character evidence may be offered:

"(1)  In all cases in which evidence of character or a trait of character of a person is admissible, *proof may be made by testimony as to reputation or by testimony in the form of an opinion.* On cross-examination, inquiry is allowable into relevant specific instances of conduct." (Emphasis added.)

In his offer of proof, defense counsel described the testimony of six proposed witnesses: two police officers and four private citizens. Defense counsel explained that the two police officers were prepared to testify that they were of the opinion that Christy and Gutzmann were violent and had reputations for violence. Defense counsel also described the proposed opinion testimony of another witness, Carman, that Gutzmann was violent. Within the same offer of proof, defense counsel explained that the two police officers and two private citizens were prepared to give their opinions that Deatherage was violent; the two police officers would also testify that Deatherage had a reputation for violence.

I agree with the majority and the trial court that the evidence concerning Deatherage was inadmissible. However, the remaining evidence described by counsel was admissible under OEC 405(1). Contrary to the majority, I conclude that, although the offer of proof contained some evidence that was admissible and some that was not, the way in which counsel described the evidence in the offer of proof was sufficiently precise to permit the trial court to determine which evidence was admissible and which was not and to allow this court to review the correctness of those rulings. *See State v. Olmstead,* 310 Or 455, 461, 800 P2d 277 (1990) (purpose of offer of proof is to ensure that the trial court can make an informed decision); *State v. Affeld,* 307 Or 125, 128, 764 P2d 220 (1988) (purpose of the offer of proof is to ensure that appellate courts are able to determine whether it was error to exclude evidence and whether any error was likely to have

affected the result of the case). Accordingly, I would hold that defendant's proffered evidence concerning Gutzmann's and Christy's violent character and reputation was admissible character trait evidence under OEC 404(2)(b) and OEC 405 and that the trial court erred in excluding it.

The majority is concerned that defendant's failure to segregate each item of evidence as a separate offer of proof "deprived the trial court of the ability" to make an informed decision that the consideration of an offer of proof requires. 182 Or App at 435. Respectfully, it did not. Defendant's various items of testimony, although made in a single offer of proof, were easily segregated and were not dependent on each other. The inadmissibility of one portion of the evidence did not taint the other evidence. Each witness's testimony was precisely described, including whether the testimony would provide opinion or reputation evidence. In fact, in questioning defense counsel as to whether defendant was "aware of the *character or reputation* of *any of the persons* prior to the incident,*" the court recognized that each piece of testimony was to be considered separately. (Emphasis added.) True, the offer of proof could have been cosmetically divided by listing each person's testimony as to each victim's character and reputation as a separate offer of proof, but there was no practical need for or consequence of such a degree of specificity.

My view is supported by our recent opinion in *State v. Cunningham,* 179 Or App 359, 40 P3d 1065 (2002). There, the defendant sought by motion *in limine* to exclude as hearsay the contents of the victim's telephone conversations with her mother on the night of her murder as well as the victim's written notes of conversations with the defendant on the same date. The trial court ruled that all of the evidence was admissible, under OEC 803(2), as statements made while the victim was under stress or excitement caused by an event or condition.

On the defendant's appeal challenging the trial court's ruling, the state argued that the trial court's ruling should be affirmed, contending that, because the defendant moved *in limine* to exclude all of the hearsay statements, if

any of the statements was admissible, they were all admissible. "The state posits that, because defendant did not make separate legal arguments in respect to each hearsay statement, '[h]e cannot complain that the trial court did not rule on them separately.' " *Cunningham*, 179 Or App at 371.

We discussed in *Cunningham* the Supreme Court's case law relating to how objections to hearsay must be preserved for appeal. Specifically, we noted that " 'when evidence is offered *as a whole* and an objection is made to the evidence as a whole' " the trial court ordinarily will not be reversed on appeal for admitting the evidence if any portion of the offered evidence was properly admissible, despite the fact that the other portions would not have been admissible had proper objections been made to those portions of the proffered evidence. *Id.* at 373, *quoting Sproul v. Fossi*, 274 Or 749, 755, 548 P2d 970 (1976) (emphasis in original). But, as we reasoned in *Cunningham*, when the various items of evidence are of such a distinct nature that an objection to the evidence as a whole cannot reasonably be understood to be a single objection, but rather an objection to the various separate parts, then the various items of evidence should be separately analyzed even though the defendant sought to exclude the evidence through a single motion *in limine*.

In considering the evidence at issue in *Cunningham*, we said that the telephone conversations and the written note should be considered separately and, further, that the admissibility of each conversation should be analyzed separately:

> "The two telephone conversations between the victim and her mother, which occurred almost an hour apart, cannot be viewed holistically * * *. The telephone calls not only were separated in time, but the victim's demeanor differed in each telephone call. In fact, defense counsel noted in his argument on the motion *in limine* that the later telephone call, in particular, did not show the degree of excitement or agitation required of an excited utterance. We conclude that defendant's objections to the two telephone calls to the victim's mother must be treated as an objection to two separate items of hearsay evidence and analyzed accordingly." 179 Or App at 373.

The issue in *Cunningham* concerned the correctness of the trial court's ruling *admitting* evidence over the defendant's objection. That is the flip side of the question presented here of the trial court's *exclusion* of evidence offered by defendant. However, our analysis of both issues should reflect an application of the same principle: The party seeking to offer or to exclude evidence must create a record sufficient to enable the trial court to determine whether the evidence is admissible and to allow this court to review the correctness of that ruling. Applying that principle here, we should conclude that defendant's offer of proof of the testimony of several witnesses should be regarded for preservation purposes as separate offers of proof to be separately analyzed by the trial court and by us.

Furthermore, in light of the trial court's ruling that *all* character and reputation evidence was categorically excluded because defendant was not acquainted with either of the victims, it was arguably futile for defendant to have made a more specific offer of proof. *See Olmstead*, 310 Or at 461.

The majority nonetheless concludes, citing *Pumpelly v. Reeves*, 273 Or 808, 812, 543 P2d 682 (1975), that the trial court properly rejected the entire offer of proof because the offer contained both admissible and inadmissible evidence. *Pumpelly* applied the oft-cited rule that, if any portion of an offer of proof is inadmissible, then it is not error to exclude the entire offer of proof. The feature that distinguishes this case from *Pumpelly* and numerous other cases involving offers of proof containing both admissible and inadmissible evidence is that, here, the different components of the evidence were separately listed, and each stood on its own. The offer was not made as an all-or-nothing package. The trial court could easily have admitted any part of defendant's list of witnesses and testimony, and the record indicates that the court understood that it was to consider each component of the offer of proof separately. In contrast, in *Pumpelly*, the evidence was offered as a unified bundle in proof of the plaintiff's lost earnings. Because one portion of the evidence was inadmissible, the entire offer of proof on lost earnings properly

could be excluded.[2] *See also State v. Dugan*, 177 Or App 545, 34 P3d 726 (2001) (offer of proof sought to admit three forms of character evidence in "undifferentiated fashion"); *State v. Thomas*, 149 Or App 557, 945 P2d 1056 (1997) (offer of proof related to testimony from a single witness that contained both admissible and inadmissible statements); *State v. Howard*, 49 Or App 391, 619 P2d 943 (1980) (same).

The majority is also concerned that defendant's offer of proof did not identify the specific statutory subsections under which defendant sought to offer the disputed evidence.[3] However, as I read the colloquy between the court and counsel concerning defendant's final offer of proof, it is clear that neither the judge nor the parties were limiting their discussion to specific subsections of OEC 404. All subsections of the statute, including OEC 404(2)(b), had been discussed at some point in the trial. Although in the final discussion of his offer of proof defendant's counsel did not identify OEC 404(2)(b) as a source of the court's authority to admit the disputed evidence, neither the parties nor the court was referring to specific subsections at that point. OEC 404(2)(b) had, in fact, been identified earlier by the state as authority for the admissibility of evidence of a victim's character. Accordingly, the court was not without notice that the admissibility of the evidence should be considered under OEC 404(2)(b). The majority assumes that, because the trial court did not apply the criteria for the admissibility of evidence under OEC 404(2)(b), *i.e.*, it made an inquiry that arguably applies only to OEC 404(1), then the court must have

---

[2] Furthermore, *Pumpelly* may have misapplied the rule on offers of proof that combine admissible and inadmissible evidence. The offer of proof in *Pumpelly* could properly be viewed in either of two ways. From one perspective, all of the evidence in the offer of proof was admissible; the flaw in the offer was that it failed to include evidence on expenses, so the offer failed to meet the legal requirements necessary to establish lost profits. Alternatively, because net rather than gross income was the proper measure of damages for lost profits, evidence of net income should have been submitted in the offer of proof rather than evidence of gross income. The court in *Pumpelly* rejected the offer of proof because it failed to establish what it had to establish to make all of the evidence in the offer admissible. *Pumpelly*, 273 Or at 810-12. The court should have stopped at that point and not added, as an alternative basis for its decision, the point about admissible and inadmissible evidence, because the principle applied only if the court improperly rejected one of the two tenable ways to view the offer of proof.

[3] I note that the state does not assert that defendant's arguments relating to OEC 404(2)(b) have not been preserved.

been considering the admissibility of the evidence only under OEC 404(1) and not under OEC 404(2)(b). If that is true, the court nevertheless erred in light of the fact that the court had before it OEC 404(2)(b), under which it should have considered the admissibility of the evidence. Further, I do not assume that the trial court must have been analyzing the case only under OEC 404(1); it is just as likely that the trial court thought that OEC 404(2)(b) also required defendant to be aware of each victim's violent character and reputation for the evidence to be admissible. In short, on this record I do not read the trial court's analysis to be limited to OEC 404(1); rather, I believe that the trial court considered the admissibility of the evidence under all of the subsections of the statute that the parties previously had cited.

I further reject the state's contention that the trial court's error in excluding the evidence was harmless. The Oregon Supreme Court has observed that a claim that a defendant acted in self-defense

> "would be more readily believed concerning a violent and dangerous man than a peaceable and quiet one, and any mind searching for the truth and in doubt would naturally be affected by such evidence." *State v. Thompson*, 49 Or 46, 49, 88 P 583 (1907).

Defendant's claim of self-defense was predicated on evidence that he believed that members of the victims' group had weapons and would use them against defendant and his friends. There was conflicting evidence about who initiated the altercation and its nature. Defendant testified that he thought the members of the victims' group were going to shoot defendant and his friends or were going to beat them to a "living pulp." He testified that he did not intend to shoot anyone but "pulled the trigger to stop the situation that was going way too far out of my control." I cannot say that the jury would not have been more inclined to believe defendant's version of the events if it had had before it evidence of each victim's violent character and reputation. *See State v. Hansen*, 304 Or 169, 180, 743 P2d 157 (1987); *State v. Griffin*, 19 Or App 822, 833, 529 P2d 399 (1974). Accordingly, I would hold that the evidence could have affected the jury's verdict and that the trial court's error in excluding it was not harmless.